HAMITER, Justice.
 

 Plaintiffs, the Long-Bell Petroleum Company, Inc., and its lessee, the Barnsdall Oil Company, instituted this suit to enjoin the defendant, Sam R. Tritieo, from interfering with the exercise of mineral and leasehold rights, allegedly owned by them, in lands in Beauregard Parish described as the Northwest Quarter of Section 27, all of Section 28, and the East Half of Section 29, Township S South, Range 9 West.
 

 Additionally, plaintiffs prayed for judgment confirming the title of the Long-Bell Petroleum Company, Inc., to the mineral rights in and under the entire tract, and recognizing the oil, gas and mineral lease of Barnsdall Oil Company covering all of .the land except that situated in Section 27'.
 

 In denial of the asserted mineral and leasehold rights, defendant, through a special plea and in his answer, urged the prescription of 10 years.
 

 After a trial of the merits the district court rendered judgment decreeing' the Long-Bell Petroleum Company, Inc., to be the owner of all mineral rights in and under the above described lands by reason of reservations contained in two separate deeds dated November 14, 1941, recognizing the lease of Barnsdall Oil Company obtained from that mineral owner on December 1946, and enjoining defendant from interfering with the exercise of those mineral and leasehold rights.
 

 Defendant appealed from the judgment. On the occurrence of his death thereafter his heirs were substituted as parties defendant.
 

 The record discloses that by an instrument dated December 29, 1931, the Long-Bell Farm Land Corporation sold and conveyed to the Long-Bell Minerals Corporation all Of the oil, gas and other minerals in and under a vast tract of land, including the lands involved in this suit. This entire mineral interest, by means of a merger agreement, was acquired on February 27, 1936, by the Long-Bell Petroleum Company, Inc., a plaintiff herein.
 

 A conveyance instrument dated December 28, 1936, and executed by the Long-Bell Farm Land Corporation, recited that the identical mineral interest, as well as minerals in and under other lands, was thereby transferred to the said Long-Bell Petroleum Company, Inc.
 

 On November 14, 1941, the Long-Bell Farm Land Corporation (hereinafter referred to as Farm Land Corporation) and the Long-Bell Petroleum Company, Inc. (hereinafter referred to as Petroleum Company), joined, as vendors, in the execution of two separate cash deeds in favor of Charles H. Burton and Earl R. McGraw respectively, the deeds together describing the lands affected .by this litigation. Nei
 
 *431
 
 ther deed was signed by the vendee. These instruments' were recorded in Book 80, pages 260 and 262, of the conveyance records of Beauregard Parish, and, insofar as pertinent here, each recited:
 

 “Know All Men By These Presents, That the Long-Bell Farm Land Corporation, organized under the laws of the State of Missouri, and The Long-Bell Petroleum Company, Inc., organized under the laws of the State of Louisiana, hereinafter called the vendors, for the consideration hereinafter recited, and on the terms and conditions hereinafter expressed, by these presents do hereby Grant, Bargain, Sell, Convey, Assign, Set Over and Deliver unto * * * hereinafter called the vendee, the following described real property situated in the Parish of Beauregard, State of Louisiana, to-wit:
 

 * * *
 
 *
 
 * *
 

 “This conveyance is made expressly subject to existing roads over the above described premises, and also subject to the rights of the United States to use said land for army maneuver purposes until September 30, 1942.
 

 “The Long-Bell Farm Land Corporation is to pay all taxes on said land for the year 1941.
 

 “There is hereby expressly reserved unto the Long-Bell Petroleum Company, Inc., its successors and assigns, all of the oil, gas and minerals beneath the surface of all the land above described, with full and exclusive rights and authority to exercise all reasonably necessary means for the prospecting, exploring and developing of such oil, gas and other minerals, including such right of access to the use of the surface of said land as may be necessary or. incidental to this reservation; provided, however, that the Vendee, or his heirs or assigns, shall not be required to remove any buildings or other improvements placed or made upon said land, and provided further that in the exercise of said reservation reasonable compensation shall be made for damage caused to said land and improvements and growing crops thereon, and reasonable rentals shall be paid for such of said land, if any, as may be used exclusively for such purposes.
 

 i}i Jji
 

 “To Have And To -Hold the said property and appurtenances, subject to the reservations, exceptions and conditions aforesaid, unto the said Vendee, his heirs and assigns, forever; and the said Long-Bell Farm Land Corporation hereby binds itself, its successors and assigns, to Warrant and forever defend the property and appurtenances herein conveyed against all legal claims and demands whatsoever, except those herein expressly reserved and except as to taxes not now due and payable.”
 

 That part of the property acquired 'by McGraw was sold by -him on March 12, 1945, to the said Charles H. Burton, the instrument evidencing the transfer containing the provision: “Subject to outstanding oil, gas and mineral reservations and road right of ways.”
 

 
 *433
 
 The defendant Tritico acquired the combined tract from Charles H. Burton under a deed of date May 22, 194S. Among'other things it provided: “Said property is sold subject to such reservations and restrictions as were set forth in two certain deeds dated November 14, 1941, recorded in Conveyance Book No. 80, at pages 260 and 262 of the Records of Beauregard Parish, Louisiana.”
 

 On December 9, 1946, Barnsdall Oil Company obtained its oil, gas and mineral lease from the Petroleum Company,
 

 For the success of this action, plaintiffs rely primarily on the two deeds of November 14, 1941. Those deeds, as shown above, expressly reserved the minerals unto the Petroleum Company (a plaintiff) and are links in defendant’s chain of title. In view of these circumstances plaintiffs demands could not be challenged seriously were it not for the fact that under our jurisprudence a sale or reservation of mineral rights is considered as the creation of a servitude and is governed by the laws of this state relating to such subject.
 

 Invoking that jurisprudence, and without in any manner questioning the alleged separate existence of the several Long-Bell Corporations appearing in the chain of title (the directorate of all of the corporations is identical except as to two directors), defense counsel, along with -a supporting amicus curiae, show that at the time of the execution of the mentioned two deeds the Petroleum Company was the owner of an outstanding mineral servitude affecting the lands in dispute (also other lands), it having been created on December 29, 1931, by means of the mineral conveyance from the Farm Land Corporation to Long-Bell Minerals Corporation (later merged with the Petroleum 'Company) ; they contend that the minerals, being outstanding, could not be validly sold again by the Farm Land Corporation; and they insist that such servitude became extinguished on December 29, 1941, following the sale of the land by Farm Land Corporation, because of non-usage during the 10 year period by the owner thereof, the Petroleum Company. Further, defense counsel and amicus curiae dispute plaintiffs’ primary claim herein, which is that the reservations in the deeds of November 14, 1941, created new and independent mineral servitudes in favor of the Petroleum Company; and they maintain that such reservations were mere statements of fact regarding the outstanding servitude of 1931, the only purpose of inserting them in the deeds being to protect the Farm Land Corporation under its warranty of title to the lands sold.
 

 With reference to the mentioned primary claim of plaintiffs, defense counsel state, to quote from their brief, that: “If the language of these deeds, as just quoted, constitutes a renunciation by Long-Bell Petroleum Company, Inc., of its then existing mineral servitude and the creation of a new one in its favor, then the demands of plaintiffs-appellees must prevail. But if that lan
 
 *435
 
 guage does not .accomplish those results, then the claims of the defendants-appellants are correct.”
 

 Again, quoting from their brief, defense counsel say: “It would have been possible for these Long-Bel'l companies to extend their 'mineral servitude for ten years from 1941. It would have been a relatively simple matter to draft legally acceptable instruments cancelling the existing mineral servitude and creating another. If such were their intent, the 1941 deeds could have contained the express provision that the owner of the servitude was renouncing the existing servitude in favor of the owner of the fee, and the owner of the fee was in turn making a new reservation, and creating a new mineral servitude. But they did not do this. They simply appear in a deed as vendors and reserve that which one of the corporations already owned. * * * ”
 

 Clearly, therefore, the principal question presented for determination by this litigation is: What was the legal effect of the deeds of November 14, 1941, particularly the reservations contained therein? As shown by his well-considered written reasons for judgment the trial judge resolved that question favorably for plaintiffs, in accordance with their primary contention, concluding that the deeds (as to the lands described therein) effected an extinguishment of the mineral servitude previously owned by the Petroleum Company and simultaneously created and vested in the latter new and independent servitudes on the lands conveyed by the respective instruments.
 

 With that conclusion we are unable to disagree. Exceedingly important to consider in this case is the fact that the Petroleum Company, which held the outstanding servitude, joined the Farm Land Corporation in the execution of the deeds as a vendor. Had the Petroleum Company not. signed the deeds the remaining parties, obviously, could not have contracted effectually respecting the mineral rights, except to the extent of acknowledging that they were outstanding, because neither then owned them. The Petroleum Company, however, did sign the deeds. And as a result of the joint signing by the two corporations the vendees received under the new deeds not only the lands with the reversionary rights to the minerals (owned by the Farm Land Corporation) but also the minerals in and under the lands conveyed (owned by the Petroleum Company). At the same time, by reason of the reservations agreed to by all parties, the vendees retransferred or alienated to the Petroleum Company the mineral rights in and under their acquired lands, subject to certain restrictions and conditions, thereby creating new and independent mineral servitudes.
 

 An analysis of the pertinent provisions of the deeds sustains this conclusion. Each deed, at the commencement thereof, recites that the two corporations, called vendors, do hereby grant, bargain, sell, etc., unto the named vendee the real property particularly described. Next is a paragraph relating to roads and army maneuver rights to which the conveyance is made subject. Then the
 
 *437
 
 Farm Land Corporation agrees to pay the 1941 taxes. Following this is the disputed express reservation of minerals in favor of the Petroleum Company. Without, or in the absence of, the reservation there could be no doubt that, since 'both corporations signed as vendors, the vendee acquired under the deed both the land and its attending minerals, and that, as a consequence, the previously existing servitude as respects that particular land became extinguished.
 

 Now what is the nature of such a reservation in a deed and what does it accomplish in so far as the contracting parties are concerned? According to Thornton’s Law on Oil and Gas (Fourth Edition), Volume 2, page 1603, Section 854(e), “An exception in a deed is something existing before as a part of the thing granted and which is accepted from the operation of the conveyance; but a reservation is something created out of the granted premises that was ' not in existence before.” See also Fifth Edition of that authority, as revised and rewritten by Willis, Volume 2, Sections 470 to 473, inc., and United Gas Public Service Company v. Roy et al., La.App. Second Circuit, 147 So. 705. A reservation operates by way of a regrant by the grantee to the grantor of the estate or interest reserved. Fartherree et al. v. McCormick et al., 199 Miss. 248, 24 So.2d 724. Thus, a reservation of minerals in a sale of land amounts to an alienation of the minerals from the land by the vendee to the vendor. A sale of land with reservation of the minerals is equivalent, in other words, to the sale of land and the simultaneous reconveyance’ of the minerals.
 

 Considered in this light each of the deeds under consideration (executed by the two corporations as vendors in favor of and accepted by the respective vendees) must be held to have accomplished a transfer to the vendee of the described lands and all the minerals thereunder, with a resulting ex-tinguishment by confusion of the prior servitude, and a retransfer or an alienation of the minerals (by reason of the reservation) to the Petroleum Company, thereby creating a new and independent servitude. Undoubtedly, if the reservation had been in favor of the Farm Land Company (which is not the case here) it would have vested a new and independent servitude in that corporation.
 

 But defense counsel and amicus curiae contend, and they argue vigorously, that since the vendees did not sign the deeds a retransfer of the minerals to'the Petroleum Company was impossible of accomplishment. In the brief of defense counsel it is said: “The reply brief cites several cases to the effect that the acceptance of a contract need not be in writing, but here more than a mere acceptance was needed. It was necessary that there be a
 
 grant
 
 by the named vendee, the actual transfer of a real right, which must be in writing and must be signed by the person making such a grant or transfer. In the 1941 deeds at issue we have neither granting language by the vendee,
 
 *439
 
 nor the writing and signature of the vendee to effecutate any grant or transfer.”
 

 This contention can not be sustained. Defendant is claiming title through and under the deeds in question, of which the assailed reservations are important terms, and the settled jurisprudence of this court is that, “The acceptance of a contract does not necessarily have to be in writing, nor is it essential for it to be signed by the party in whose favor it is made. Where one accepts the benefits of a contract, he is bound by all of the terms contained in the contract.” Dobbins v. Hodges, 208 La. 143, 23 So.2d 26, 30, and cases therein cited.
 

 Further, defense counsel and amicus curiae, to quote an identical extract from their respective briefs, argue that, “The only party legally capable of reserving a mineral right and thereby creating a servitude is the owner of the land, who by virtue of such ownership is the owner of the mineral rights thereunder. The Long-Bell Farm Land Corporation, owner of the land, had not been owner of any minerals under defendant’s property since December 29, 1931, and will never own such mineral rights unless it acquires them at some future date. Then what minerals did this corporation have to reserve in 1941 when it sold the land to defendant?” And in support thereof they direct attention to the following comment contained in Gulf Refining Company v. Orr et al., 207 La. 915, 22 So.2d 269, 270: “If the owner of land incumbered with a mineral servitude cannot create another mineral servitude thereon by the sale of the same mineral rights, which he does not own, it logically follows that neither can he create another mineral servitude on the land by a reservation in the deed of sale of the same mineral rights which he does not own.”
 

 But that argument overlooks the important fact that the owner of the outstanding minerals or servitude also signed the deeds as a vendor. The joint signing, as shown above, resulted in the uniting of the titles to the land and minerals in the vendees and the extinguishing by confusion of the prior servitude. Then by the same deeds, through the mentioned reservations agreed to by all of the contracting parties, there was vested in the Petroleum Company the new servitudes.
 

 As to the question of the intention of the parties in the execution of the two deeds of November 14, 1941, the trial judge offered the following appropriate observations with which we fully agree:
 

 “After considering all of the provisions of the two 1941 deeds, this court is convinced that in executing said instruments the parties intended that the existing mineral servitude which was then owned by the Petroleum Company was to be extinguished and that new and independent mineral servitudes were to be created affecting the property described in said deeds. Since the Petroleum Company joined in and executed each of the deeds as a vendor, it thereby fully divested itself of its interest in the
 
 *441
 
 minerals, and if that portion of the deeds had not been followed by a special reservation of minerals, certainly the Petroleum Company would have had no right to assert any -further ownership of the mineral rights. If the reservation had been of only a royalty interest or a fraction of the mineral rights it would be obvious that the Petroleum Company had • renounced the rights which it formerly owned and had acquired in lieu thereof a new right or servitude. There' is no reason why a different interpretation should be applied in this case just because all 'of the mineral rights were reserved.
 

 “If the purpose of the reservation in each of the 1941 deeds was simply to show that the land was being sold ‘subject to’ the existing mineral rights, as contended by defendant, there would have been no reason for Petroleum Company to have executed the deeds at all, and certainly it would not have joined in and executed each act of sale as a vendor where the title was warranted. It also appears to this court that if -such was the intent of the parties the words ‘subject to’ would have 'been used in that portion of each deed which related to minerals rather than the words, ‘There is hereby expressly reserved.’ And it i-s reasonable to conclude that if the parties intended that the property was to be sold merely subject to the -existing mineral servitude, there would have been some mention in the reservation of the fact that Petroleum Company had previously acquired such a servitude. But there wa-s nothing contained in the reservation to indicate in any manner that the Petroleum Company had owned a mineral servitude affecting this property prior to the time the 1941 deeds were executed. Th-e land was sold subject to existing roads and subject to the rights of the United States to use the land for maneuver purposes, 'but entirely different language was used in the reservation of the minerals. In order for this court to arrive at a conclusion in line with defendant’s contention, it would not only have to interpret the reservation of minerals as meaning something entirely different from what it says, but the court al-so would have to ignore or disregard the fact that Petroleum Company did join in and execute the 1941 deeds as a vendor and the fact that by said instruments Petroleum Company sold and conveyed its entire interest in the property to the purchasers. * * *
 

 %
 
 J|S # 5fC
 

 “At the time defendant herein purchased the property from -Charles H. Burton on May 22, 1945, both of those parties evidently considered that the reservation contained in each of the 1941 deeds either created new servitudes or interrupted prescriptions as to the old servitude, because the property at that time was sold to and purchased by defendant subject to the reservations which were -set forth in the two 1941 deeds. Such a provision in the 1945 deed is not consist
 
 *443
 
 ent with the position now taken by defendant that the old servitude 'became extinguished by non-usage on December 29, 1941, or more than three years before defendant purchased the property. Regardless of the legal effect of such a provision in the 1945 deed it indicates that the purchaser in at least one of the 1941 deeds, Charles H. Burton, intended that the reservations contained in that instrument should have a greater effect than defendant now contends that it should be given.”
 

 To this we might add that the reserva- ' tions in the 1941 deeds contain certain conditions and restrictions not found in the grant creating the previous mineral servitude. For example, the reservations state that the vendees shall not be required to remove any buildings or other improvements placed or made upon the land, and that the Petroleum Company in the exercise of its mineral rights must pay reasonable rentals for such of the land as may be used exclusively for that purpose. The prior grant did not so provide. Further, it is to be noticed that the new servitudes would affect only the lands covered by the respective deeds, whereas the prior servitude embraced not only those lands but also thousands of acres of other lands. All of these circumstances argue strongly in favor of an intention of the parties to create new servitudes.
 

 The conclusion that the primary claim of plaintiffs is meritorious makes unnecessary a consideration and a discussion of their several alternative contentions.
 

 For the reasons assigned the judgment appealed from is affirmed.
 

 PONDER, J., dissents.
 

 O’NIELL, C. J., takes no part.