HAMITER, Justice.
 

 In compliance with judgments rendered against them in previous jactitation suits, plaintiffs instituted these consolidated petitory actions in which they claim the ownership of and leasehold rights to all of the minerals in and under certain lands of the defendants situated in Beauregard Parish.
 

 Plaintiffs prevailed in the district court, and the defendant landowners are appealing.
 

 Appearing in the chains of title relating to the disputed properties are various corporate entities controlled by the Long-Bell interests, the good faith separate existence of which is not challenged by defendants. Thus, on November 1, 1930 Long-Bell Lumber Sales Corporation (herein referred to as Sales Corporation) acquired from Long-Bell Lumber Company (herein called Lumber Company) a large area of lands, including the tracts now owned by these defendants. On December 29, 1931 all of the oil, gas and other minerals in and under
 
 *673
 
 such area was sold and transferred by Sales Corporation to the Long-Bell Minerals Corporation (the result of this transaction, under our jurisprudence, was the creation of a mineral servitude). On November 30, 1935 the Sales Corporation re-transferred said lands to the Lumber Company; and the latter, on the same day, conveyed them (with other lands) to Long-BellJFarm Land Corporation (herein termed Farm Land Corporation). The Long-Bell Minerals Cox'poration, on February 27, 1936, was merged with and into' the Long-Bell Petroleum Company, Inc. (herein known as Petroleum Company). On December 28, 1936 Farm Land Corporation executed a deed in favor of Petroleum Company which recited a transfer, without warranty of title, of all of the oil, gas and other minerals in and xxnder the above mentioned area (and other lands). In the year 1943, Farm- Land Corporation and Petroleum Company joined in the execution of warranty deeds to the authors in title of the defendants herein (the deeds described the lands now owned by the latter), each instrument containing a mineral reservation in identical language (except as to the use of pronoxxns) which reads as follows:
 

 “There is hereby expressly reserved unto The Long-Bell Petroleum Company, Inc., its successors and assigns, all of the oil, gas and minerals beneath the surface of all the land above described, with full and exclusive right and authority to exercise all reasonably necessary means for the prospecting, exploring and developing of such oil, gas and other minerals, including such right of access to the use of the surface of said lands as may be necessary or incidental to this reservation, provided, however, that the vendee, or his heirs or assigns shall not be required to remove any buildings or other improvements placed or made upon said lands, and provided further that in the exercise of said reservation, reasonable compensation shall be made for damage caxxsed to said lands and improvements and growing crops thex'eon, and reasonable rentals shall be paid for such of said lands, if any, as may be used exclusively for such purposes.”
 

 By subsequent warranty deeds, in which no' reference whatever was made to mineral rights, the defendants acquired their respective tracts.
 

 The instant litigation was commenced in 1950. Plaintiffs in these petitory actions (defendants in the previous suits in jactitation) are Lumber Company (successor of Farm Land Corporation by virtxxe of a merger in 1944), Petrolexxm Company, and their mineral lessee, Magnolia Petroleum Company. They alleged in the petitions, and they maintain herein, that the mineral servitude created in Minerals Corporation (subseqxxently the Petroleum Company as a result of a merger) by the deed of December 29, 1931, which affected the lands here involved, had not been exercised within ten
 
 *675
 
 .years on these or any contiguous lands held under'the same deed; that as a result of the ten year non-use such servitude prescribed and terminated on December 29, 1941 and the minerals reverted to the then landowner, Farm Land Corporation; and that in 1943 the Farm Land Corporation, being the owner of the fee title and all minerals, effectively vested ownership of the minerals in the Petroleum Company (a plaintiff) by means of the reservation contained in its deeds through which these defendants acquired their land titles.
 

 In resisting plaintiffs’ claim to the minerals defendants contend primarily, to quote from the brief of their counsel,” * * * that the mineral servitude created in the deed dated December 29, 1931 from Lumber Sales Corporation to Mineral Corporation expired for ten years non-use on December 29, 1941, and simultaneously with its expiration the servitude created by the mineral sale from Farm Land Corporation to Petroleum Company on .December 28, 1936 operated against the land still owned by Farm Land-Corporation at that time, and was therefore in effect when Farm Land Corporation made the transfers to defend-, ants’ authors in title in 1943, and finally terminated on December 28, 1946 for ten years non-use, at which time the minerals reverted to the owners of the land, defendants herein.”
 

 Defendants, it is noticed, admit the expiration on December 29, 1941 of the mineral servitude created by the deed of December .29, 1931. However, relying on the mineral deed from Farm Land Corporation to Petroleum -Company of date December 28, 1936, they say that on the occurrence of that expiration the previously created second servitude of 1936 in favor of Petroleum Company became effective, the duration of which thereafter was approximately five years or until 1946; and they take the position that in 1943, by reason of the then outstanding second servitude in Petroleum Company, the Farm Land Corporation had no minerals to reserve and its attempted reservations in the deeds to defendants’ authors in title were inoperative.
 

 In the comparatively recent case of Long-Bell Petroleum Co., Inc. v. Tritico, 216 La. 426, 43 So.2d 782 (on the rehearing, not on the original hearing), we considered the same 1936 mineral deed' on which -these defendants now rely, and we concluded that by it no servitude was created since Petroleum Company, the vendee, already owned a servitude resulting from the 1931 mineral sale. But defendants’ counsel assert that the 1936 deed was there held to be ineffective only as to the particular land involved in that case, the reason being that the Farm Land Corporation sold such land in 1941 before the expiration of the 1931 servitude. Then they point out that in the instant .situation Farm Land Corporation (the grantor in the 1936 deed to Petroleum Company which already owned the 1931 servitude) remained the owner of the land
 
 *677
 
 until after the termination of the 1931 servitude; and they argue that the 1936 transaction constituted an “oversale of the minerals” which resulted, under the doctrine of after acquired title, in the establishment of a new servitude in Petroleum Company when the 1931 servitude terminated in 1941.
 

 Clearly the doctrine of after acquired title cannot be applied to the 1936 mineral deed, even assuming that it is applicable to mineral sales in some instances. When the deed was executed Petroleum Company, the grantee, was already the owner of all of the minerals purportedly transferred, it having acquired them under the 1931 sale; and, being the owner, its purchasing them again was legally impossible. As said in LSA-Civil Code, Article 2443, “He who is already the owner of a thing, can not validly purchase it. If he buys it through error, thinking it the property of another, the act is null, and the price must be restored to him.”
 

 ■Easily distinguishable on the facts are the decisions of this court cited and relied upon by defense counsel, namely White v. Hodges, 201 La. 1, 9 So.2d 433, McDonald v. Richard, 203 La. 155, 13 So.2d 712 and Bates v. Monzingo, 221 La. 479, 59 So.2d 693. In none did the same party, as here, purchase identical minerals; in each the purchase was by a third party.
 

 In the alternative counsel for de- ' fendants, in their brief, declare “ * * * that the provisions in the 1943 deeds relied on by plaintiffs as establishing their title to the minerals has been construed and interpreted by this court in the Tritico case [Long-Bell Petroleum Company, Inc. v. Tritico, supra] as not constituting a reservation, but was merely inserted in the deeds as a protection of the vendor under its warranty, and- a protection of the vendee in the use of his land. That neither the Petroleum Company nor Farm Land Corporation acquired or obtained any title to the minerals by virtue of the provision.” (Brackets ours)
 

 True, the language of the mineral • reservation in the 1941 deeds involved in the Tritico case was identical with that of the reservation (relied on by plaintiffs herein for establishing their title to the minerals) contained in the 1943 deeds through which these defendants acquired their lands. And it is also true that in such liti- ■ gation this court (a majority on rehearing) concluded that the reservation had only a protective purpose and that it did not place the title to the minerals in Petroleum Company, thereby creating new servitudes. (With that conclusion the author of this opinion disagreed, his view, to which he still adheres, having been expressed by him on the original hearing.) But from a careful reading of the majority opinion on rehearing in the Tritico matter it clearly appears that the reservation in the November, 1941 deeds was so held to be ineffective be- ■ cause, and solely because, those jdeeds were
 
 *679
 
 executed within ten years from the date of the original servitude of December 29, 1931 (different from the 1943 deeds here), at which time the vendor, Farm Land Corporation, had no minerals to reserve. It was not said therein that the language of the reservation was insufficient in itself to create a mineral servitude. In fact, on the contrary, the observation was made that under the express provisions of the deeds title to the minerals never passed to the vendees.
 

 Further, in the alternative, defense counsel contend “ * * * that the language contained in the clauses relied on by plaintiffs as establishing their titles to the minerals does not constitute a reservation by the Farm Land Corporation for the benefit of the Petroleum Company, and even if the court should find the language was intended for that purpose, nevertheless, it is still ineffective, for a reservation or transfer of minerals cannot be created in that manner.”
 

 On the execution of the 1943 deeds Farm Land Corporation owned, as before shown, not only the lands but also the minerals. It alone, at that time, had the right to make a mineral reservation. And a reservation for the benefit of Petroleum Company was effectively consummated through its signing of the deeds which recited that the minerals are “expressly reserved unto the Long-Bell Petroleum Company, Inc., its successors and assigns.” This reservation is in the nature of a stipulation pour autrui, the validity of which is recognized by the laws and jurisprudence of this state. Especially appropriate is LSA-Civil Code, Article 1890' which declares:
 

 “A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked.”
 

 For the reasons assigned the judgments appealed from are affirmed at appellants’ costs.