81 So.2d 389

Clyde PERKINS

v.

The LONG–BELL PETROLEUM COMPANY, Inc.

No. 41905.

May 23, 1955.

Jesse Andrews, Houston, Tex., W. E. Slagle, Kansas City, Mo., LeCompte, Hall & Coltharp, De Ridder, for appellant.

Plauche & Stockwell, Lake Charles, for appellee.

McCALEB, Justice.

This suit was filed on September 10, 1953, under the provisions of LSA–R.S. 30:101 [1] by the owner of land situated in Allen Parish to cancel a mineral reservation contained in his deed of acquisition, dated April 20, 1943, for 10 years' nonuser and for a $5,000 attorney's fee. It is aver-

---

1. This statute sets forth in substance that, when any mineral rights expire by reason of prescription, the claimant thereof shall, within 30 days after written demand by the landowner, furnish the latter with an acknowledged instrument directing the cancellation of such mineral rights on the records and that, if he fails or refuses to comply within this time, he shall be liable to the landowner for all damages suffered and, in addition, shall be liable for attorney's fees if his failure to comply is not founded on a bona fide dispute.

red that the right of action arises by reason of defendant's refusal to execute and deliver an instrument directing the cancellation of its mineral servitude after having been requested to do so.

Defendant resisted the demand, asserting that prescription has not accrued because it was suspended by the interposition of an obstacle by plaintiff to the exercise of the servitude; that, further, plaintiff is estopped by his conduct from now contending that the servitude has prescribed and, moreover, that plaintiff caused a legal interruption of the running of prescription by filing an earlier suit against it in Allen Parish.

After a trial on these issues, the district judge decreed that defendant's reservation of mineral rights had prescribed, but rejected plaintiff's demand for attorney's fees. Defendant has appealed from the adverse decision and plaintiff has answered, praying that the judgment be amended to allow him the claimed attorney's fees.

The evidence adduced at the trial establishes the following facts:

On April 20, 1943, plaintiff purchased the land from Long-Bell Farm Land Corporation and in this deed the minerals were reserved in favor of Long-Bell Petroleum Company, Inc., defendant herein.

2. This proposed contest of the legality of the servitude emanated from the decision of this Court in Long-Bell Petroleum Co., Inc., v. Tritico, 216 La. 426, 43 So.2d 782, under which mineral reservations by one of the Long-Bell corporations in favor of another (as in this case)

On May 24, 1948, defendant executed a mineral lease covering this and other lands in favor of Magnolia Petroleum Company.

On June 8, 1949, there was placed of record in Allen Parish an instrument dated September 24, 1947, wherein plaintiff employed the law firm of Plauche & Stockwell for the purpose of contesting the validity of the mineral servitude in favor of defendant and conveyed to the firm one-fourth of the minerals.[2]

On April 24, 1951, plaintiff granted a mineral lease covering the property to I. J. Goode, who assigned it on the same day to Magnolia Petroleum Company. The lease was for a primary term of five years but Magnolia failed to pay the first delay rental and the contract thus expired on April 24, 1952. On the same day that this lease was granted, the attorneys for plaintiff and Magnolia Petroleum Company entered into an agreement to the effect that plaintiff was granting a mineral lease to Magnolia, through Goode, so as not to interfere with Magnolia's development of the property.

On August 13, 1951, plaintiff instituted a jactitory action against defendant claiming title to all of the minerals and, on August 21, 1951, defendant filed an exception of

were rendered open to serious question. It was not until our ruling in Long-Bell Lumber Co. v. Granger, 222 La. 670, 63 So.2d 420, which became final in February of 1953, that the validity of defendant's servitude became definitely established.

possession.[3] Nothing further was done in this suit until July 19, 1953, when plaintiff dismissed it without prejudice.

On October 20, 1952, the oil and gas lease given by defendant to Magnolia expired according to its terms.

On May 13, 1953, plaintiff granted to A. W. Hutchings an oil and gas lease, which was then assigned to H. L. Hunt. On June 1, 1953, defendant likewise gave a lease to H. L. Hunt. Hunt began drilling in the same month and, in July of 1953, a producing well was completed.

It was stipulated at the trial that there were no explorations for oil or gas on the land between April 20, 1943 and April 20, 1953 so that, unless prescription has been suspended or interrupted, as claimed by defendant, the mineral servitude became extinguished by nonusage. Articles 783 and 789 of the LSA–Civil Code.

Defendant's principal contention is that the jactitation suit filed by plaintiff interposed an obstacle to its exercise of the servitude within the meaning of Article 792 of the LSA–Civil Code and that the ten-year prescription for nonuser was therefore suspended from August 13, 1951 to June 19, 1953. It also invokes the equitable principle of estoppel, asserting that, by filing the jactitation suit and by recording the instrument in which he claimed title to the minerals, plain-

tiff cannot now be heard to contend that the ten-year prescription has accrued. To support its position, counsel for defendant depend on a long line of cases which hold that, when a lessor of a mineral lease files and prosecutes a lawsuit against his lessee for the annulment or forfeiture of the lease, he thereby deprives the lessee of the exercise of the rights granted to him by the lease and, if the lessee prevails, he is entitled to an extension of the lease equal to the period of the litigation. See Leonard v. Busch-Everett Co., 139 La. 1099, 72 So. 749; Standard Oil Co. of Louisiana v. Webb, 149 La. 245, 88 So. 808; Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, 95 So. 538; Fomby v. Columbia County Development Co., 155 La. 705, 99 So. 537; Williams v. James, 188 La. 884, 178 So. 384; Knight v. Blackwell Oil & Gas Co., 197 La. 237, 1 So.2d 89 and Baker v. Potter, 223 La. 274, 65 So.2d 598.

█ The cited cases, which, as we have said, involve unsuccessful proceedings by a mineral lessor against his lessee for the cancellation of the lease, are founded upon the equitable principle that it would be manifestly unfair to permit a lessor, who is obligated under Article 2692 of the LSA–Civil Code "To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease", to violate his duty by seeking the annulment of the

---

3. This exception was well founded under authority of International Paper Co. v. Louisiana Central Lumber Co., 202 La. 621, 12 So.2d 659 and Ware v. Baucum, 221 La. 259, 59 So.2d 182.

lease and yet insist that, during the pendency of the proceedings, the lessee is bound to comply with the obligation to drill or exercise its right to explore for minerals. But those authorities are without pertinence to this case because here is involved a mineral servitude which either has or has not become extinguished by operation of law. Indeed, the fundamental error in the argument of defense counsel stems from their attempt to assimilate a mineral servitude with a mineral lease and place them on the same plane. That they are different and produce diverse legal effects is no longer an open question in this court. See Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 and Dixon v. American Liberty Oil Co., 226 La. 911, 77 So.2d 533, 537.

▮ A mineral lease, though characterized as a real right under LSA–R.S. 9:1105, is, as stated in the last cited case, "merely a contract which permits the lessee to explore for minerals on the land of the lessor in consideration of the payment of a rental and/or bonuses." To this, we may add that the lessee is not only accorded the right to explore but is obliged to do so in most cases. or pay a delay rental if he does not explore within the primary term of the lease. In a mineral lease, the lessor, being entitled to royalties in the event of production, is interested in requiring his lessee to explore. Not so with a landowner whose property is subjected to a mineral servitude.

Being without interest in the minerals, he is without right, during the existence of the servitude, to insist upon development, and the only duty required of him is to permit the servitude owner to explore as long as the servitude remains in esse. The grant of the servitude " * * * does not oblige the owner of the estate subject to it to do anything * * *." Article 655 of the LSA–Civil Code.

▮▮ In the case at bar, the filing of the jactitation suit could not estop plaintiff from claiming the accrual of prescription because prescription, being a method of acquiring ownership of property or discharging debts by the effect of time, can only be tolled under the conditions regulated by law, Article 3457 of the LSA–Civil Code, to which equitable principles are inapplicable, Article 21 of the LSA–Civil Code. And Article 3521 of the Code declares that "Prescription runs against all persons, unless they are included in some exception established by law."

▮ Hence, it is seen that the theory upon which the decisions involving mineral leases are pitched is clearly inapplicable to a case dealing with the extinguishment of a mineral servitude by ten years' nonuser. Accordingly, unless it be, as defendant contends, that the filing of the jactitory action constituted an obstacle which prevented the running of prescription during its pendency, defendant cannot succeed.

Article 792 of the LSA–Civil Code provides:

"If the owner of the estate to whom the servitude is due, is prevented from using it by any obstacle which he can neither prevent nor remove, the prescription of non-usage does not run against him as long as this obstacle remains."

Defense counsel maintain that this case falls squarely within the purview of the Article as, obviously, it would have been impractical, due to the high cost of mineral explorations, for the defendant to have hazarded a user of the servitude while the suit assailing the validity of its title was pending. This argument might be most persuasive in a case buttressed by a state of facts leading to the inevitable conclusion that the institution and pendency of such a lawsuit was actually a hindrance to the exercise of the servitude. But, as found by the district judge in a well-considered opinion, the facts of this case do not justify such a holding. The evidence shows that plaintiff, although contending (since the decision in Long-Bell Petroleum Co., Inc., v. Tritico, 216 La. 426, 43 So.2d 782 until Long-Bell Lumber Co. v. Granger, 222 La. 670, 63 So.2d 420 became final) that the mineral reservation in defendant's favor was invalid, did not at any time deny to defendant free access to the land for exploration purposes. On the contrary, he sought to assist defendant's lessee in the development of the land by granting to said lessee a lease covering all of the minerals thereunder and, at the same time (April 24, 1951), making a written agreement with Magnolia in which it was stated that the lease was granted so as not to interfere with its free exploration for minerals. The suit was filed after this lease was granted to Magnolia and, although the latter did not elect to exercise the right of exploration, the action had no effect whatever on its decision, as Magnolia held the exclusive privilege, which remained intact until the termination of its lease from defendant on October 20, 1952. From that date until April 20, 1953, when prescription accrued, defendant at no time sought to grant another lease nor did it attempt in any way to exercise its servitude. Under these circumstances, it cannot now be heard to profess that the lawsuit was an obstacle which prevented it from using the servitude. In truth, it is evident that the present claim of obstacle has no foundation in fact but is now being urged as a legal defense to extinguishment because of the advent of an oil well which was completed shortly after the servitude came to an end.

 Defendant also contends that the filing of the jactitation suit by plaintiff constituted a legal interruption of prescription under Article 3518 of the LSA–Civil Code. The substance of this Article, which is found in the part of the Code dealing with prescription acquirendi causa,[4] is that

---

4. Section 2 of Title XXIII, which embraces Articles 3472–3527.

an interruption of prescription takes place when the possessor has been cited to appear before a court of justice on account either of the ownership or of the possession. The Article pertains, however, to liberative prescription as well, for Article 3551 of the LSA–Civil Code provides that the prescription releasing debts is interrupted by all causes which interrupt the prescription by which property is acquired. Thus, counsel claim that a literal application of Article 3518 to the case would afford a legal interruption.

 There is no merit in the argument. To apply the literal meaning of Article 3518 would lead to the absurd consequence that the filing of a suit by a landowner effectuates an extension of the servitude for another ten years, when the object of the suit is to have the servitude declared null and have it erased from the public records. The basis of the legal interruption provided by the Article, when applied to prescription liberandi causa, is that the filing of a suit before the accrual of prescription operates to rebut the presumption of an abandonment of the right. Article 3518 has nothing to do with the tolling of prescription on a servitude.

Plaintiff has asked that we assess his expense for attorney's fees against defendant. The trial judge denied this claim on the ground that a bona fide dispute existed between the parties relative to the accrual of prescription and that, therefore,

it was not allowable under the provisions of LSA–R.S. 30:101. We think that this resolution was correct.

The judgment is affirmed.