105 So.2d 210

Oscar REAGAN, Sr.

v.

C. H. MURPHY, Jr., et al.

No. 43553.

June 27, 1958.

Dissenting Opinion July 7, 1958.

Rehearing Denied Oct. 7, 1958.

Oliver & Fudickar, Sholars, Gunby & Guthrie, Monroe, for defendants-appellants.

John E. Parker and Tinsley Gilmer, New Orleans, amici curiae.

Ellis & Ellis, Rayville, for plaintiff-appellee.

McCALEB, Justice.

This suit and its companion, Jones v. Sun Oil Company (Murphy), 235 La. 554, 105 So.2d 219, present for determination the question whether the liberative prescription of 10 years can be properly applied to a mineral lease. There is no dispute as to the salient facts of the cases, which have been stipulated by the parties and are identical.

On December 11, 1941, J. E. Holt granted a mineral lease to Murphy covering some 19,281 acres of land owned by him in Franklin Parish for a consideration of $5,000 cash and certain royalties to be paid by the lessee (1/8th on oil and gas) on any production which might be obtained

from the contemplated explorations. Murphy subleased a portion of the lands to American Liberty Oil Company on September 25, 1945 and transferred an undivided 1/2 interest in the lease, covering other lands, to Sun Oil Company on January 20, 1945 and August 28, 1945. The lease was for a primary term of 10 years and thereafter for an indefinite time, as long as production would continue. During the primary term, production was obtained on a portion of the leased lands, which presently forms part of the Delhi Oil Field. These wells, which are situated on lands not contiguous to the tracts involved herein, are likely to continue in production for many years.

After granting the lease, specifically on March 23, 1942, Holt sold a 40-acre tract (SE1/4 of the SW1/4, S. 18, T. 15 N., R. 8 E.) to plaintiff Reagan and, on September 3, 1943 sold another 40-acre tract (SW1/4 of the NW1/4, S. 30, T. 15 N., R. 8 E.) to plaintiff, Jones. These lands were covered by the mineral lease and were also included in the lands Murphy subleased to Sun Oil Company. In each of the sales to plaintiffs, Holt reserved all of the minerals, the deeds also reciting that the sales were made subject to the mineral lease dated December 11, 1941.

No drilling operations have ever been conducted on either one of the 40-acre tracts and, following the expiration of the ten year period, the mineral servitudes in

favor of Holt became extinguished, these real rights being formally released by him in favor of each plaintiff at their respective requests.

Following acquisition of the minerals, plaintiffs made demand for cancellation of the mineral lease insofar as it affected their respective properties and, upon the failure of Murphy and Sun Oil Company to comply with their request, these suits were instituted for a partial cancellation of the mineral lease on the ground that it has prescribed as to these two parcels by reason of the failure of defendants to explore for minerals on each respective non-contiguous tract for a period of ten years.

The defense to the cases is that, since oil and gas leases are governed by the laws applicable to ordinary leases and regulated by contract of the parties, the liberative prescription of ten years is inapplicable as a mineral lease is an indivisible contract maintained by the development of any portion.

The plaintiffs, on the other hand, declare, in the main, that a mineral lease is similar to a mineral servitude and, therefore, becomes extinguished by the prescription of ten years nonusage; that, since their tracts are not contiguous to the tracts on which production has been obtained, the lease is not a single lease, but separate leases or servitudes covering each non-contiguous tract and that, accordingly, the production obtained from other lands covered by the

lease was not a user of their lands and did not affect their liberation from the burden of the lease by the ten-year prescription.

The trial judge sustained plaintiff's contention on the authority of Arent v. Hunter, 171 La. 1059, 133 So. 157. Defendants have appealed.

It cannot be gainsaid that Arent v. Hunter is indistinguishable from the cases at bar. In that matter, Hunter and McCormick leased to Producers Oil Company five non-contiguous parcels of land, the contract containing provisions quite similar to those of the mineral lease involved herein. This lease was assigned to The Texas Company and a producing well was secured by the latter on one of the five tracts. Subsequently, Arent acquired title to the five tracts through mesne conveyances in which Hunter and McCormick had reserved all minerals. More than ten years afterwards, Arent filed a jactitation suit against The Texas Company and Hunter and McCormick for cancellation of the mineral lease and the mineral servitudes held by the latter on the ground that they had become extinguished by the ten-year prescription for nonusage. The Court, applying the rule enunciated in Lee v. Giauque, 154 La. 491, 97 So. 669 and Keebler v. Seubert, 167 La. 901, 120 So. 591, that a mineral servitude established on non-contiguous tracts created separate servitudes on each tract, sustained plaintiff's plea of prescription as to

four of the five tracts involved, defendants' rights to the other tract having been preserved by user and production. In so concluding, the Court treated the mineral servitudes and the lease as one and the same as to their legal effect and, hence, the holding therein fully supports the position of the plaintiffs in these cases.

Arent v. Hunter was decided in 1931, during the period in which the mineral law which has been developed by this Court was still in its formative stage. At that time the members of the Court, while being in agreement that a sale of minerals constituted the creation of a real right in the nature of a servitude (See Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207) had not yet reached any definite conclusion as to the true nature of a mineral lease and, consequently, expressions can be found in the jurisprudence in which a mineral lease is regarded as a sale or considered, as in Arent v. Hunter, to be in the same category as a mineral servitude.[1]

It was not until 1936, in its decision in Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846, that the Court swept away the confusion evoked by the earlier cases [2] respecting the genuine character of a mineral lease. It was held there that a mineral lease did not create a real right in favor of the lessee; that the contract produced merely personal rights and obligations between the parties, the lessee being limited to a personal action against his lessor for delivery of possession and could not maintain a petitory action against a third person. This pronouncement was not well received by the oil industry and, through its efforts, the Legislature, at its regular session of 1938, enacted Act 205 which classified oil and gas leases as real rights and provided that they may be asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property without the concurrence of the landowner in any action or by any procedure available to the owner of land.

But this Act has never been regarded by the Court as creating a real right in its true sense. On the first occasion in which its constitutionality was assailed, Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336, the Court held that the 1938 Act was intended to grant mineral lessees the advantage of maintaining real actions in protection of their interests and was merely procedural in character. Finding that the Act was not designed to alter the substantive nature of a mineral lease, its constitutionality was upheld as against the contention that to apply it retrospectively would impair the obligation of the contract. See also Alli-

---

1. This is illustrated by the view of the late Chief Justice Charles A. O'Niell, who concurred in the result of Arent v. Hunter but said that he did not " * * *

approve of calling a lease a servitude". [171 La. 1059, 133 So. 163].

2. Such as Rives v. Gulf Refining Co. of Louisiana, 133 La. 178, 62 So. 623.

son v. Maroun, 193 La. 286, 190 So. 408 and Amerada Petroleum Corporation v. Reese, 195 La. 359, 196 So. 558.

Thus it is clear, at this point of the discussion, that the Glassell decision and the cases above referred to construing Act 205 of 1938, which hold that a mineral lease is like any other predial lease and creates merely a personal right, are in direct conflict with Arent v. Hunter. Hence, although the latter has never been specifically overruled in terms, its doctrine has been rejected necessarily by implication.

An examination of all subsequent jurisprudence serves to verify the Court's adherence to the views expressed in the Glassell case and its insistence in keeping mineral leases within their proper legal sphere.

In Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369, 390, the defendant mineral lessees contended that they were entitled to rely on the law of registry and that, by virtue of it, had acquired a greater right than an ordinary lessee in view of Act 205 of 1938. But the Court, citing the rulings in the Allison, Tyson and Amerada Petroleum cases and also Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473, rejected the contention and reiterated

that Act 205 of 1938 is "remedial and procedural in character, and that it has not affected or changed any of the substantive rights flowing from the execution of mineral leases."

Immediately after the Arnold case became final, the oil fraternity sought to obtain for mineral lessees by legislative enactment the special consideration denied them in that decision and was successful in having the 1938 statute amended by Act 6 of the Second Extra Session of 1950. This amendatory act, which has been incorporated in the Revised Statutes as R.S. 9:-1105, retains the provisions of the 1938 Act [3] and adds a sentence thereto reading as follows:

"This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate."

It has been contended by counsel for appellees, and particularly by the amicus curiae who is aligned with appellees, that this amendatory provision, that the law

3. Except that it eliminates Section 2 of the 1938 Act which specifically provided that it " * * * shall apply to all such transactions whether entered into prior to the passage of this Act or not." It is probable that the provision was deliberately excluded to avoid any idea of an intent to impair contractual obliga-

tions, in view of the legislative pronouncement of a creation of substantive rights. Unconstitutionality was not made an issue in this case but it might well have been, since the contract was confected in 1941, prior to the passage of the Act.

classifying mineral leases as real rights is to be considered as substantive as well as procedural, has the effect of changing the essence of the mineral lease contract.

This proposition cannot be sustained as there is nothing contained in the amendatory section to indicate such an aim. It is to be noted, imprimis, that the original law does not say that mineral leases are real rights. It declares, in substance, that they are to be *classified* as real rights and "may be asserted, protected, and defended in the same manner" as may be the ownership or possession of other immovable property. And the amendment does not say that the statute created substantive real rights. It merely provides that the law shall be *considered* as substantive, in order that the owners of mineral leases "shall have the benefit" of real property laws.

Indeed, it is perfectly evident from even a casual reading of the amendment that the Legislature did not intend to change the essence of the contractual rights and obligations between mineral lessees and lessors but only that it sought to place mineral lessees on the same level as landowners by conferring on them "benefits" of the laws relating to owners of immovable property. This, the Act spells out in no uncertain terms for, after classifying a mineral lease as a real right, it is declared that the law shall be considered as substantive as well as procedural for a special purpose, i. e.,

" * * * so that the owners of * * * mineral leases * * * shall have the benefit of all laws relating to the owners of real rights * * *".

This has been our expressed view of the 1950 amendatory act in the two recent cases in which we have had occasion to consider it. See Dixon v. American Liberty Oil Company, 226 La. 911, 77 So.2d 533 and Perkins v. Long-Bell Petroleum Company, 227 La. 1044, 81 So.2d 389, 393.

In Perkins v. Long-Bell Petroleum Co., we said:

"A mineral lease, though characterized as a real right under LSA–R.S. 9:1105, is, as stated in the last cited case (Dixon vs. American Liberty Company), 'merely a contract which permits the lessee to explore for minerals on the land of the lessor in consideration of the payment of a rental and/or bonuses.' To this, we may add that the lessee is not only accorded the right to explore but is obliged to do so in most cases or pay a delay rental if he does not explore within the primary term of the lease. In a mineral lease, the lessor, being entitled to royalties in the event of production, is interested in requiring his lessee to explore. Not so with a landowner whose property is subjected to a mineral servitude. Being without interest in the minerals, he is without right, during the existence of the servitude,

to insist upon development, and the only duty required of him is to permit the servitude owner to explore as long as the servitude remains in esse. The grant of the servitude ' * * * does not oblige the owner of the estate subject to it to do anything * * * '. Article 655 of the LSA–Civil Code."

■ That a lease is not in essence a real right under the civil law is well settled. In In re Morgan R. & S. S. Co., 32 La.Ann. 371, it was said:

"The rights of use, enjoyment, and disposal are said to be the three elements of property in things. They constitute the jura in re. The right of a lessee is not a real right, i. e., a jus in re. In other words, the lessee does not hold one of the elements of property in the thing. His right is a jus ad rem, a right upon the thing * * *".

■ Accordingly, it is clear that the term "real right" under the civil law is synonymous with proprietary interest, both of which refer to a species of ownership. Ownership defines the relation of man to things and may, therefore, be declared against the world. A personal right, on the other hand, defines man's relationship to man and refers merely to an obligation one owes to another which may be declared only against the obligor.

Viewed in this light and applied to mineral leases, it is seen that to say that the Legislature intended to change the true essence of a mineral lease from a personal contract into a real right would necessarily require the conclusion that the mineral lessee *owns* the right to explore for the minerals. The correlative of this proposition is that a mineral lessor divests himself of all proprietary interest in the minerals and has only a personal right to enforce the terms of the lease. This, for the reason that the same thing may not be owned by two persons at the same time. Civil Code, Article 494.

It becomes obvious, then, that to uphold plaintiffs' claims would serve only to confuse the fundamental law and, perhaps, place many contractual obligations and rights in a state of uncertainty. This we will not do.

■ Moreover, the plaintiffs in this case have an available adequate remedy by which defendants may be required to either develop the properties or release them from the effect of the 1941 mineral lease. It is the established jurisprudence that full development of the property on which a mineral lease is given is implicit in the lease contract, it being an implied condition of every lease that the lessee will test every part of the land subject to it with reasonable diligence or suffer a partial cancellation. See Caldwell v. Alton Oil Co., Inc., 161 La. 139, 108 So. 314; Stubbs v. Im-

perial Oil & Gas Products Company, 164 La. 689, 114 So. 595; Logan v. Tholl Oil Co., Inc., 189 La. 645, 180 So. 473; Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26 and Wier v. Grubb, 228 La. 254, 82 So.2d 1.

▮ Since we are of the opinion that R.S. 9:1105 did not have the effect of changing the true nature of real rights as defined and understood under the civil law, it follows that Article 3529 of the Civil Code, pertaining to the prescription of real rights and Article 3546, providing that the rights of usufruct, use and habitation, and servitudes are lost by ten years nonuse, are inapplicable to the cases.

The judgment appealed from is reversed and the suit is dismissed at plaintiff's costs.

SIMON, J., absent.

TATE, Justice ad hoc (dissenting).

With the utmost respect for the views of the majority expressed in the learned opinion of the organ of the court, I must nevertheless dissent.

By the present decision, this Court is holding that by the device of a mineral lease a landowner may burden or restrict indefinitely the right of his succeeding owners in title to the minerals underneath the land, despite the well-established jurisprudence and public policy of this State that a landowner's retention of control over

the minerals after he parts with title to the surface of the land cannot be sustained for longer than ten years unless there is user. Frost-Johnson Lumber Co. v. Salling's, Heirs, 1922, 150 La. 756, 91 So. 207, and the succeeding jurisprudence.

Such a result so contrary to the public policy of this state is not required by the jurisprudence. To the contrary, as the majority opinion frankly states, we are by this opinion overruling the contrary decision of Arent v. Hunter, 171 La. 1059, 133 So. 157, which has since 1931 prevented a landowner from affecting by a mineral lease the mineral interest underneath the land after any servitude created by him is extinguished. While it is true that the rationale of the Arent case has been eroded by subsequent decisions, its basic holding has not until now been overruled; and it should not be, in the absence of legislation or compelling jurisprudential reason.

Before discussing the particular legal issue involved, it is not inappropriate to state the factual setting of this decision, in the light of which may be understood the concern of this dissent that the holding of the majority marks a fundamental and undesirable departure from the aforestated jurisprudence and public policy of this State.

In 1941, Holt granted a lease upon some 19,000 acres of land owned by him, including the 40-acre tract involved in the present suit and also the 40-acre tract involved

in the companion suit, Jones v. Sun Oil Co. (Murphy), 235 La. 554, 105 So.2d 219. In 1942 and 1943 respectively, the plaintiffs in these two suits acquired their 40-acre tracts, subject to a reservation by Holt of the entire mineral interest and subject to the 1941 mineral lease granted by him. It is admitted that no mineral user or development occurred as to the present 40-acre tracts, which are non-contiguous to land of Holt upon which development *did* take place pursuant to the mineral lease in question, and that consequently after ten years (in 1952 and 1953 respectively) the mineral servitude reserved by Holt was extinguished by non-user.

Although thus under our settled law, the present landowner then theoretically became entitled to full ownership and possession of the entire mineral interest pertaining to his property, which theoretically included the right to explore for minerals and to reduce them to possession, the effect of the present decision is that the landowner received this mineral interest restricted by and subject to the terms of the mineral lease granted by his ancestor in title. (This mineral lease under its terms, which we are now upholding, is maintained without subsequent payment of rentals by production anywhere on the scattered 19,000 acres covered by the lease. Production did occur upon a portion of the acreage originally subject to the lease, which acreage is non-contiguous with the present tracts and situated in the Delhi Oil Field some eight miles distant; and it is stipulated that this production will continue indefinitely into the future.)

Although as the majority indicates the present landowner has the right to force either development under, or else cancellation of, the lease, it is to be borne in mind that he has lost by the ancient action of his predecessor in title the most valuable rights pertaining to the mineral interest he theoretically acquired when Holt's mineral servitude was extinguished by non-user: the right to bargain for and receive a bonus for granting a lease; the right to bargain for and receive greater annual rentals (the payment of which rentals to these landowners under the present lease has been unnecessary because of production on non-contiguous lands belonging to others covered by the lease); and the right to bargain for and receive a greater share of production as royalty rental than the one-eighth normal to a landowner in 1941. Thus we have held by the present decision that a landowner can reduce the right to the minerals that his succeeding owners in title will receive, from a *mineral interest* to what is in effect only a *mineral royalty interest*; and this latter, restricted to the proportion of mineral production for the present landowner as set forth by the initial lease granted perhaps many years before he acquired his land.

Now the present lease has all the appearances of being a bona fide lease grant-

ed after arm's length bargaining; but the effect of the present decision would also uphold a mineral lease granted for, say, ninety-nine years, giving the landowner as royalty rental only a 1/96th or even a 1/960th interest in production. We have opened by this decision a fairly broad avenue by which owners of great and scattered acreages can, by leasing to self-owned mineral development corporations for minimal royalty rental, in effect reserve to themselves through their subsidiary corporations a great share of the proceeds of mineral production, the right to which would otherwise revert after ten years' non-user to the landowners succeeding them in title.[1]

I have not described the factual consequences of this decision from any notion that they supply a basis for decision in substitution for legal principles.

But it must be remembered that the development of the mineral law in Louisiana has, in the absence of comprehensive legislative enactment, been left to the judiciary. Case by case the Louisiana Supreme Court has been forced to develop from the ancient concepts of our civil code the rules and principles to apply to the infinitely variegated problems of a complex and ever changing industry. Without legislative guidance in the main, and utilizing codal articles devised when the existence of modern oil development was unimagined, the court has properly taken into account the general public interest of the commonwealth when resolving by civilian principles the competing interests of the landowners and of the oil-producers and their financiers. The jurisprudence thus evolved has received well nigh universal approbation and has been ratified by legislative acceptance without fundamental change as to the regulation of mineral property rights evolving through this enlightened judicial interpretation.[2]

1. At present, to maintain mineral interests for longer than ten years without user, it is necessary for these landowners to retain title to the land. If this decision stands large landowners can, for instance, grant a lease to their own mineral corporations (cf., Perkins v. Long-Bell Petroleum Co., 227 La. 1044, 81 So.2d 389, Long-Bell Lumber Co. v. Granger, 222 La. 670, 63 So.2d 420, wherein servitudes were granted to such same-owned corporations) providing for a 1/960th royalty payment upon production. Once production was secured anywhere on the vast and scattered acreage, the lease would be continued indefinitely (that is, until production anywhere upon the entire acreage ceases.)

In that manner, the large landowner could, without his present responsibility of maintaining title to and possession of the land and paying taxes thereupon, etc., through his self-owned mineral lessee in effect maintain his right to 119/120th of the landowner's normal 1/8th royalty interest (i. e., 120/960th, or 1/8th; less the 1/960th royalty payable to the landowner under the unfavorable mineral lease the ancient landowner had granted to his own mineral corporation.)

2. As Professor Daggett stated in her authoritative treatise, Louisiana Mineral Rights (Revised Ed.:1949), p. xix: "The Louisiana courts deserve unstinting praise for the formulation of the govern-

Probably no principle of our mineral law thus developed has become more firmly established than the basic rule that no one may retain his interest in minerals underneath land he does not own for a period of longer than ten years, unless he attempts to or does develop or use same in the interim. And, as the description of the factual consequences of this decision indicates, the rule set forth by the majority opinion herein is contrary to this basic principle of our law and to the fundamental reasons of public policy which have dictated its application: a recognition that prolonged divorce of the ownership of the land from the undeveloped mineral interest thereunder is detrimental to the welfare of the State, both as tending to inhibit development of our mineral resources (without the spur of a time limit and of a financially interested landowner), and as tending to divert in the event of production the royalty rentals therefrom away from the local landowner and the local community often into the hands of such absentee financial interests as for long range investment acquire mineral interests at a time when virtually valueless on the open market.

I respectfully suggest that this Court is at almost as important a cross-roads as that at which it stood in Frost-Johnson Lumber Co. v. Salling's Heirs, 1922, 150 La. 756, 91 So. 207 and Vincent v. Bullock, 1939, 192 La. 1, 187 So. 35, when in consideration of the basic reasons of public policy above suggested, the appropriate codal articles were found to supply the vital principle of a ten years' prescription for non-user to the "mineral interest"[3] and the "mineral royalty interest"[4] respectively. The basic question at issue is whether, by the device of a "mineral lease"[5] granted by the initial owner of the land, the rights of the future owners of the land with re-

ing principles regarding mineral law. The meshing of the old articles of the code for traction in a modern and peculiar industry was not an easy task."

3. The *mineral interest* in a land created by reservation or deed "constitutes a servitude imposed upon the land, giving the owner thereof the right of ingress and egress for the purpose of exploring for and reducing to possession the minerals under the property so burdened," Horn v. Skelly Oil Co., 224 La. 709, 70 So.2d 657, 660.

4. As we recently restated in description of the *mineral royalty interest* involved in Union Sulphur Co. v. Andrau, 217 La. 662, 666–670, 47 So.2d 38, 40, such an interest "imposed on the property a real obligation, since it was attached to an immovable, and passed with the property, conditioned upon the production of oil and gas or other minerals; but if such condition did not happen within ten years, such royalty interest was lost by the prescription of ten years"; "the right of the owner of such an interest 'is restricted to a sharing in production if and when it is obtained by the landowner or a lessee.'"

5. A *mineral lease* "is merely a contract which permits the lessee to explore for minerals on the land of the lessor in consideration of the payment of a rental and/or bonuses," Dixon v. American Liberty Oil Company, 226 La. 911, 922, 77 So.2d 533, 537.

gard to the minerals thereunder may be indefinitely restricted or regulated, although following the divestment of title by the initial owner there has been for over ten years no attempted user by or through him of the mineral interest pertaining to the land in question.

The landowner's ownership of the minerals underneath his land, is as previously stated a valuable economic right in addition to the mineral royalty right to share in production if and when received. And as we have seen, the effect of the majority opinion is to convert the right a landowner acquires, when prescription extinguishes a mineral interest created by a predecessor in title, from a mineral servitude (the right to go upon the land and reduce the oil thereunder to possession, see footnote 3 above; i. e., the right to grant mineral leases and to bargain for and receive greater bonuses, annual rentals, and royalty rental in the event of production than provided by the ancient lease granted by his predecessor many years previously when production was not imminent) into a mineral royalty interest (the right to receive, in the event of production, see footnote 4 above, such a share of the production as is assigned to the landowner by such ancient lease.)

I do not think that the nature of the right conferred upon the mineral lessee requires this result, nor do I think that relationships and interests resulting from mineral leases would be disturbed if in the present case we followed rather than overruled the long-standing holding of Arent v. Hunter, supra cit.

Essentially, I feel that when the landowner grants a mineral lease upon his land, the lease is granted and the consideration therefor paid with the full knowledge that any mineral right which is thus affected by the lease may be extinguished by prescription through ten years' non-user should the landowner sell the land itself.[6] A landowner cannot by a mineral lease contract have a greater power to restrict the rights of his successors in title to the minerals underneath the land than he can by other contract reserve or affect the ownership itself of the mineral rights.

While it is true that "possession and ownership of the surface carries with it the right to reduce the minerals to possession," Dixon v. American Liberty Oil Com-

6. It is of some interest that in the original opinion in Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, Chief Justice O'Niell stated that a mineral reservation, 150 La. 780, 91 So. 216, "created a real right, or servitude of the sort called usufruct." Cf., Article 555 of the Civil Code, which provides:

"The usufructuary may enjoy by himself or *lease to another*, or even sell or give away his right; *but all the contracts or agreements which he makes in this respect, whatever duration he may have intended to give them, cease of right at the expiration of the usufruct.*" (Italics mine.)

pany, 226 La. 911, 77 So.2d 533, 536, 537, such surface ownership does not carry with it the right to reduce the minerals to possession for a period of longer than ten years after the owner divests himself of title to the surface of the land; nor does it carry with it the power to restrict or otherwise bind this right. It is my view that, whatever the nature of the transaction with regard to such mineral interest the landowner attempts to make, no action on his part can bind the mineral servitude beyond the time prescribed by the mineral jurisprudence and the public policy of Louisiana; that is, for longer than ten years without user after creation of the mineral servitude by reservation or other deed. I think such a result is dictated by the principle stated in LSA–Civil Code, Article 2015 as "* * * The law establishes the rule that no one can transfer a greater right than he himself has. * * *"

As the majority opinion reiterates, quoting from In re Morgan R. & S. S. Co., 32 La.Ann. 371: "the lessee does not hold one of the elements of property in the thing. His right is a jus ad rem, a right upon the thing"; but the *right* of the lessee is, for the payment of rentals, to go upon the land and reduce the minerals to possession. The lessee receives his right from his lessor subject to whatever right the lessor himself had. The lease is granted and taken with this knowledge and circumscribed by this

limitation. The lessor cannot confer upon his lessee a greater right with regard to the land and to the mineral interest thereunder than he himself has.

For the reasons perhaps too fully above stated, I respectfully dissent.