546 So.2d 1309 (1989)
SALVEX, INC., Plaintiff-Appellee,
v.
Dolores Hackett LEWIS, et al., Defendants-Appellants.
No. 88-383.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
Rehearing Denied August 1, 1989.
Ingram & Baker, Stephen D. Baker, Lafayette, Jones, Jones & Alexander and Jerry Jones, Cameron, for plaintiff/appellee.
*1310 Camp, Carmouche, Barsh, Gray, Hoffman & Gill, W. Joe Mize, Lake Charles, for defendants/appellants Delores Hackett Lewis et al.
Brezeale, Sachse, & Wilson, Frank S. Criag, III, and Robert L. Atkinson, Baton Rouge, for third party defendants/appellees Standard Oil Production Co. and Sun Exploration and Production Co.
Before DOMENGEAUX, LABORDE and KING, JJ.
LABORDE, Judge.
Plaintiff, Salvex, Inc., (Salvex), a mineral lessee, brought this action seeking a declaration of a right of passage for pipeline purposes over defendants' property to the nearest oil sales line. In the alternative, plaintiff demands a right of passage to the nearest public road. Defendants, trustees of the Rutherford Estate Trust and various other individuals (Rutherfords), answered the suit and filed a reconventional demand against Salvex for trespass and a third party demand against Standard Oil Production Company (Standard), formerly Sohio Petroleum Company, and Sun Exploration and Production Company (Sun) also for trespass. Both plaintiff and third party defendants filed exceptions of prescription. The trial court sustained the third party defendants' exceptions of prescription in the pretrial order. It also granted the plaintiff's exception of prescription, dismissing the reconventional demand. At trial on the merits, the trial court found for the plaintiff. Defendants appeal that decision and also bring a supplemental appeal on the granting of the exception of prescription as to the third party demand and a second supplemental appeal on the granting of the exception of prescription as to the reconventional demand. Third party defendants filed a motion to dismiss the supplemental appeal which was denied by this court.

FACTS
In 1943, the defendants' ancestor in title, Edward B. Rutherford, granted a mineral lease to Sun, which applied to all of Section 21, Township 15 South, Range 6 West, Cameron Parish, Louisiana (Section 21). In turn, Sun assigned part of its interest in the mineral lease to Standard. Standard proceeded to drill several wells on the property, establishing its production and storage facilities on the east half of the leased acreage. Standard sold its oil to the Permian Corporation (Permian) at a sales point located on the east half of the property. Although it is unclear exactly who constructed the pipeline, defendants allege that Standard constructed and buried a three inch pipeline in order to transport its oil and gas from the western half of the property to the eastern half. The pipeline traverses the east half of the property and is approximately 550 feet in length.
In 1974, all production ceased from the east half of the property and Standard and Sun released all of their right, title and interest in and to the leased acreage, less and except the west half. Defendants allege that from 1974 to 1985, Standard continued to use its production and storage facilities on the released property (the east half) and failed to remove the oil pipeline.
In February of 1985, Standard and Sun assigned their interest in the mineral lease to Salvex, which, of course, was limited to the west half of the property. Subsequently, the defendants filed an action for injunctive relief against Standard, Sun and Salvex, requiring that the production and storage facilities be removed and use of the pipeline cease. The trial court entered an order that the defendants remove the equipment from the property. The pipeline was not removed and the Rutherfords sought to have Salvex held in contempt.
At the contempt hearing, Salvex contended that since the west half of Section 21 is not traversed or abutted by any public roads, it is an enclosed estate, and thus, Salvex is entitled to a right of passage across the east half of the property to the Permian sales line. Salvex further argued that for this reason it was not required to remove the pipeline. The trial court ruled that Salvex would not be held in contempt if it brought suit to have the right of passage recognized. Salvex filed suit within *1311 the applicable delays, asking the court to recognize a servitude of passage via the pipeline or, in the alternative, a right of passage to the nearest public road.
The trial court held that the west half of Section 21 was an enclosed estate and that Salvex, as mineral lessee, had the right to demand passage. Having determined that Salvex was entitled to a servitude of passage, the trial court decided that the 550 feet of pipeline, crossing the east half of Section 21 and leading to the Permian sales line, was the appropriate passageway for the servitude. Finally, the Court awarded the defendants $121.22 as compensation for the taking.

MINERAL LEASES AND ARTICLE 689 OF THE CIVIL CODE
The threshold determination we must make in this case is whether the plaintiff, as a mineral lessee, has standing to bring suit under Article 689 of the Louisiana Civil Code, to seek a right of passage from an enclosed estate. The trial court found that the plaintiff did have standing pursuant to Article 16 of the Louisiana Mineral Code. Although defendants did not specifically brief this issue, it is mentioned in a footnote in their brief, and we find its resolution to be crucial to the determination of this case.
The issue of whether or not a mineral lessee has the right to seek a servitude of passage under Article 689 of the Civil Code was addressed by the Louisiana Supreme Court in Harwood Oil & Mining Co. v. Black, 240 La. 641, 124 So.2d 764 (1960). In Harwood, the plaintiff, a mineral lessee, sought to obtain passageway over its neighbor's estate. The Court held that since a mineral lease does not confer a real right in the land, the plaintiff is without right of action to claim a servitude of passage, it being a predial or real servitude. In reaching its decision, the Court in Harwood relied heavily on a long-standing line of jurisprudence holding that mineral leases do not create or impart real rights. Thus, to fully comprehend Harwood it is necessary to examine this long-standing line of jurisprudence and the legislative response to it.
Seeking to clear up the prevailing confusion generated by earlier cases, the Louisiana Supreme Court in Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846 (1936) held that a mineral lease does not create a real right in favor of the lessee; it merely produces personal rights and obligations between the parties. Two years later, in 1938, the Legislature enacted Act 205 which classified oil and gas leases as real rights and provided that they may be asserted, protected and defended in the same manner as the ownership or possession of other immovable property. Notwithstanding this pronouncement, the Louisiana Supreme Court continued to assert that mineral leases did not create real rights, finding the Act to be merely procedural in character and not designed to alter the substantive nature of mineral leases. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949); Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336 (1940). In 1950, presumably in response to the Arnold decision, the Legislature amended the 1938 statute and incorporated it into LSA-R.S. 9-1105 (now repealed). This statute read as follows:
"Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without the concurrence, joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases *1312 and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate." [Emphasis Added]
The Legislature's declaration that the act was to apply substantively as well as procedurally seemed to put that matter to rest.
The Court's reaction to the 1950 amendment came in Reagan v. Murphy, 235 La. 529, 105 So.2d 210 (1958). In that case, the Court refused to adopt the position that the amendment to LSA-R.S. 9:1105 had the effect of changing the nature and purpose of the mineral lease contract. It stated:
"This proposition cannot be sustained as there is nothing contained in the amendatory section to indicate such an aim. It is to be noted, imprimis, that the original law does not say that mineral leases are real rights. It declares, in substance, that they are to be classified as real rights and `may be asserted, protected, and defended in the same manner' as may be the ownership or possession of other immovable property. And the amendment does not say that the statute created substantive real rights. It merely provides that the law shall be considered as substantive, in order that the owners of mineral leases `shall have the benefit' of real property laws.
Indeed, it is perfectly evident from even a casual reading of the amendment that the Legislature did not intend to change the essence of the contractual rights and obligations between mineral lessees and lessors but only that it sought to place mineral lessees on the same level as landowners by conferring on them `benefits' of the laws relating to owners of immovable property. This, the Act spells out in no uncertain terms for, after classifying a mineral lease as a real right, it is declared that the law shall be considered as substantive as well as procedural for a special purpose, i.e., ` * * * so that the owners of * * * mineral leases * * * shall have the benefit of all laws relating to the owners of real rights * * *'."
Id. at 213. The Court concluded that to hold that mineral leases are real rights would confuse the fundamental law and place contractual rights in a state of uncertainty, and this it was not willing to do.
Harwood, supra, relied heavily on Reagan in arriving at the conclusion that a mineral lessee is not entitled to the right of passage, as a mineral lease does not confer any real rights. However, since Harwood was decided, LSA-R.S. 9:1105 was repealed and was replaced by the provisions of the Louisiana Mineral Code, specifically Article 16 and 18 thereof. Article 16 provides:
"The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence."
It is important to note that under the terms of the article mineral leases are no longer "classified" as real rights; they are real rights. This change seems to have removed the problem which concerned the Reagan Court. In one of the few cases construing this article, Northcott Exploration v. W.R. Grace and Co., 430 So.2d 1077 (La.App. 3d Cir.1983), this court unqualifiedly held that mineral leases give rise to real rights. We read "give rise" to real rights to be synonymous with "are" real rights.
We find additional support for this position in the Official Comments to Article 16. The extensive commentary accompanying the article indicates that the redactors were acutely aware of the problems posed by the pre-existing jurisprudence, but were confident that the article resolved these problems. Indeed, if there is one proposition that is clear from the comments, it is that the statute declares that a mineral lease is a real right. The following are excerpts from the comments:
"The characterization of all `mineral rights' as real rights in land reflects *1313 present law insofar as mineral servitudes, mineral royalties, and similar interests are concerned. However, the characterization is at least a superficial change from the judicial attitude toward the mineral lease. E.g., [Harwood, supra; Reagan, supra; Arnold, supra; Gulf Refining, supra.] It is intended that this article make it clear that the mineral lease is a species of mineral rights and, as a result of that classification, is a real right.... It is desirable to recognize that the combined substance of the patchwork of existing jurisprudence and statutes together with the functional realities of the mineral leasing transaction make it clear that though the mineral lease is a hybrid institution, it is a real right and should be recognized as such... All things considered, the lease has the major characteristics of a real right... the mineral lessee may assert his rights against the world just as the proprietor of any other real right.... The basic purpose of this article is to recognize that insofar as the mineral lease transfers both operating rights and rights to production it is a real right and not a mere personal contract."
The commentators have also been in favor of recognizing mineral leases as real rights. Professor Yiannopoulos in his treatise on predial servitudes argues that under the Mineral Code a mineral lease is a real right, and therefore, a mineral lessee should be entitled to the right of passage. Yiannopoulos, Louisiana Civil Law Treatise: Predial Servitudes, § 95 (1983). He states:
"The word `owner' in Article 689 of the Louisiana Civil Code ... ought to be interpreted broadly to include anyone who has a real right on the enclosed estate.... It would seem this right should also belong to one having a mineral servitude or other limited personal servitude. A predial lessee does not have a real right; therefore he is not a proper plaintiff in an action for a forced passage. The Louisiana Supreme Court has held under the regime of the 1870 Code that a mineral lessee, like a predial lessee, is not the owner of an estate entitled to the right of passage for mineral operations because he has merely a personal right. Under the Mineral Code, however, a mineral lease is clearly a real right and application of Article 689 of the Civil Code in favor of a mineral lessee would seem proper. [footnotes omitted]
Id., at 279. It is important to notice the distinction Professor Yiannopoulos draws between predial lessees and mineral lessees. Predial lessees are not entitled to the right of passage as they do not possess a real right. Mineral lessees, on the other hand, do possess a real right, as determined by the Mineral Code, and should be thus afforded the right to demand the servitude of passage. This distinction will take on great relevance in our discussion later in the opinion of this court's holding in Cobb v. McCart, 478 So.2d 204 (La.App. 3d Cir.1985).
Relying on the clear and unambiguous language of Article 16 of the Mineral Code, we find the Supreme Court's decision in Harwood that a mineral lessee is not entitled to the servitude of passage to be legislatively overruled. There can be no doubt that under the Mineral Code, mineral leases are real rights and that this is in direct conflict with Harwood. In reaching this decision, we note that in Louisiana, as in other civil law jurisdictions, legislation is superior to all other sources of law, including jurisprudence. LSA-C.C. art. 2. We also note that when legislative intent is clearly expressed, the courts must follow it. Greater New Orleans Homestead Association v. Bell, 219 La. 41, 52 So.2d 241 (1951). Since the intent of Article 16 is manifestly clear, we are bound to follow it. Thus, we determine that the plaintiff has standing to seek a servitude of passage.
We are mindful, however, of this Court's decision in Cobb v. McCart, 478 So.2d 204 (La.App. 3d Cir.1985). In Cobb, we relied on the Supreme Court's decision in Harwood for the proposition that a lease is a strictly personal right which does not confer *1314 a real right on the lessee. Even though we denied a predial lessee the right to demand a servitude of passage in Cobb, we find that case to be clearly distinguishable from the instant case. The lessee in Cobb was not a mineral lessee and therefore the case did not involve mineral rights under the Mineral Code. As was previously mentioned, there is a great distinction between a predial lessee and a mineral lessee under Louisiana law, in that, the former does not possess a real right and the latter does. Accordingly, insofar as Cobb relied on Harwood for the proposition that a predial lessee is not entitled to a servitude of passage, it was properly decided.
Having come to the conclusion that the plaintiff is entitled to demand the right of passage over the defendant's property, we now turn our attention to the question of what is the proper passageway for this servitude. The defendants contend that the trial court erred in granting the plaintiff a declared right of passage for the transportation of oil and gas through a pipeline to the Permian sales line. We agree. There is nothing in the Civil Code or in the jurisprudence which sanctions a servitude of passage for pipeline purposes.
Article 689 of the Civil Code establishes the right of passage. It provides:
"The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion."
There is a glaring distinction between the passageway that this article permits and that proposed by the plaintiff, in that, Article 689 grants the right of passage to the nearest public road, whereas plaintiff seeks to obtain passage to an oil sales line located on the defendants' property. A case we find to be dispositive is Rockholt v. Keaty, 256 La. 627, 237 So.2d 663 (1970). In this case, the Court denied a right of passage to the plaintiffs, where passage was not to a public road, but to other land owned by the plaintiffs.
We also find that the type of passageway plaintiff seeks is generally beyond the scope and purpose of Article 689. The legislative history of the provision establishes that the intent of the servitude of passage is to grant the owner of an enclosed estate a passageway for foot or vehicular traffic. In the 1870 Code, the article (then article 699) was primarily agrarian in scope, allowing for the right of passage for the "cultivation" of one estate, although the article certainly wasn't limited to agricultural concerns. See Littlejohn v. Cox, 15 La.Ann. 67 (1860). The provision was amended by Act No. 197 of 1916. In this version it gave the owner of the enclosed estate the right to construct a road, railroad or tramway over the neighboring estate. As can be plainly seen, the legislative history of Article 689 does not support the granting of a servitude of passage for a pipeline.
There is also jurisprudential authority that militates against such an expansive interpretation of Article 689. In Irland v. Barron, 230 So.2d 880 (La.App. 2d Cir. 1970), the court held that a defendant who was granted a right of passage could not park or store boats along the servitude. The Court stated:
"In the case of Quaglino v. Curren, 8 Orleans App. 191 (La.App. Orleans 1911), the court pointed out that a servitude of passage means the right to pass over one estate in order to reach another. We find no cases enlarging this right except for the purpose of improving the roadway of the beneficial estate."
Id. at 887. We do not feel that these cases stand for the proposition that the servitude of the right of passage should be read stricti juris; however, we do find the plaintiff's pipeline servitude of passage to be beyond the scope and purpose of Article 689.
Although the plaintiff is not entitled to use the pipeline for the right of passage, it is entitled to a right of passage to the nearest public road in width suitable for the ingress and egress of oil transport *1315 trucks. It is undisputed that the west half of Section 21 (the property affected by the mineral lease) is an enclosed estate. The only objection the defendants raise to the granting of a right of passage is that the estate has become voluntarily enclosed under Article 693 of the Civil Code. This article provides that:
"If an estate becomes enclosed as a result of a voluntary act or omission of its owner, the neighbors are not bound to furnish a passage to him or his successors."
Defendants argue that since Standard and Sun voluntarily enclosed the property through the partial release they executed, Salvex, as their successor, is not entitled to the right of passage. We determine that this defense is not available to the defendants, as the partial release was not a "voluntary" act, but one required by Louisiana mineral law. Under the terms of the mineral lease granted in favor of Sun, dated February 8, 1943, the lease had a primary term of nine years and would continue after that nine year period for as long as oil, gas or other minerals were produced from the land. Both the defendants' brief and the partial release document itself state that the eastern half of the leased acreage ceased to produce. Pursuant to Louisiana mineral law, Sun and Standard were obligated to release that part of the property which was not producing any oil or gas. Noel Estate, Inc. v. Murray, 223 La. 387, 65 So.2d 886 (La.1953); Vance v. Hurley, 215 La. 805, 41 So.2d 724 (La. 1949). Accordingly, the release of the east half of the property was not by its nature "voluntary," but rather, was required by a mineral lessee's obligations under Louisiana mineral law. Therefore, we find that the estate did not become voluntarily enclosed under Article 693, and that plaintiff is entitled to the right of passage to the nearest public road.

TRESPASS
The defendants urge that the trial court committed error in granting the plaintiff's and the third party defendants' exceptions of prescription. We uphold the trial court's granting of prescription as to the third party defendants, but reverse its sustaining of prescription as to the plaintiff.
We begin with the third party demand. In their third party demand, the defendants contend that Standard and Sun committed a continuing trespass in utilizing the 550 foot gas pipeline which traverses the eastern half of Section 21. On appeal, they argue that since the pipeline is still on the property, there is a continuing trespass and that prescription does not commence to run on their demand until the object is removed.
We find that in the third party demand, the defendants failed to allege any facts or produce any evidence which would prove an interruption, suspension or any other exception to the running of prescription. It is well-established in Louisiana jurisprudence that when the plaintiff's petition shows on its face that the prescriptive period has run, the burden is on the plaintiff to prove an interruption or suspension of prescription. Wallace v. State Farm Mutual Automobile Insurance Co., 509 So.2d 466 (La.App. 3d Cir.), writ denied, 510 So.2d 377 (La.1987); Frederick v. Aetna Casualty Company, 467 So.2d 600 (La. App. 3d Cir.1985); Simmons v. Bartleet Chemical, Inc., 420 So.2d 1273 (La.App. 3d Cir.1982). The third party demand states in pertinent part that:
"From 24 June 1974 until 21 February 1985, the Third Party Defendants, Sun and Sohio, utilized a three (3) inch sales line running apprpoximately [sic] 550 feet off the eastern leasehold boundary over the Third Party Plaintiffs' property."
Under Article 3493 of the Civil Code, the prescriptive period for damage to immovable property is one year from when the owner acquired or should have acquired knowledge of the damage. However, if the trespass is continuous, giving rise to progressive damages, prescription runs from *1316 the date of the last harmful act. South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531 (La.1982). The trespass was clearly a continuous one, as it occurred from June 24, 1974 until February 21, 1985. It is also apparent that the last harmful act occurred on February 21, 1985. Since the third party demand was not filed until April 8, 1986, more than one year after the date of the last harmful act, prescription has run on the defendants' trespass claim.
We are not persuaded by defendants' argument that as a result of the pipeline still being on the property, there is a continuing trespass and prescription will not commence to run until the pipeline is removed. Defendants cite Terral v. Poole, 484 So.2d 227 (La.App. 3d Cir.1986); M & A Farms, Ltd. v. Town of Ville Platte, 422 So.2d 708 (La.App. 3d Cir.1982); Joseph A. Neyrey, General Contractor v. Louisiana Power & Light Co., 347 So.2d 266 (La.App. 4th Cir.), writ denied, 350 So.2d 897 (La. 1977) in support of this proposition. However, we find these cases are not applicable to the case at bar. These cases hold that a continuing trespass occurs when the defendant erects a structure or places an object on another's land and fails to remove it. In their third party demand, the defendants allege that Standard and Sun merely "utilized" the pipeline, not that they constructed it or placed it on the property. There are no factual allegations in the third party demand as to who constructed the pipeline, when it was constructed or who owned it. Without this evidence or any allegations to this effect, it is impossible to apply any of these cases. Thus, we hold the defendants have not carried their burden of proving a suspension, interruption or exception to prescription.
The defendants' reconventional demand contains almost the identical factual allegations as their third party demand. They contend that Salvex committed a continuing trespass in utilizing the pipeline which crosses their property. Salvex filed an exception of prescription as to the trespass action, based on the fact that one of the defendants testified that he had actual knowledge of the alleged trespass more than one year before the reconventional demand was filed. The trial court granted the exception and the defendants bring this second supplemental appeal.
In their second supplemental appeal, the defendants raise essentially the same argument as they raised on supplemental appeal; the argument being that the existence of the pipeline on defendant's property is a continuing trespass and prescription does not begin running as to an action for trespass until it is removed. To support this position, the defendants rely on the same cases they relied on in their supplemental appeal. We determine that, for the same reasons that the cases were not applicable to the third party demand, they are likewise inapplicable to the reconventional demand against Salvex. The reconventional demand alleges that Salvex merely "utilized" the pipeline, and there are no allegations to the effect that Salvex constructed the pipeline or placed it on the defendants' property.
Even though the cases cited by the defendants are not germane to the issue involved in the reconventional demand, the allegations are to the effect that the trespass complained of is continuous, and gives rise to progressive damages. See Landry v. Pierre Part Natural Gas Company, Inc., 344 So.2d 412 (La.App. 1st Cir.1977). As was previously mentioned, the prescriptive period for damage to an immovable is one year from when the injured party acquires knowledge of who or what caused it; however, when the damaging conduct is continuous, prescription runs from the date of the last harmful act. South Central Bell, supra. Defendants allege in the reconventional demand that the plaintiff was utilizing the pipeline up until the time the demand was filed. It is therefore apparent that the last harmful act occurred within one year of the filing of the reconventional demand, and that prescription has not run as to the defendants' demand.
For the foregoing reasons, that part of the trial court's decision which granted Salvex *1317 the right to utilize the pipeline is reversed. We allow Salvex's alternative demand for a right of passage across the eastern half of Section 21 to the nearest public road, and remand to the trial court for determination of the particular route and the compensation due for the taking. We affirm the trial court's decision sustaining the exception of prescription as to Standard and Sun. We reverse the trial court's sustaining of the exception of prescription in favor of Salvex, and the case is remanded to the trial court for trial on its merits. Costs of this appeal are to be borne equally by plaintiff and defendants.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.