# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-KA-00475 COA

CEDRIC BYRD                                                                 APPELLANT

v.

STATE OF MISSISSIPPI                                                        APPELLEE

DATE OF JUDGMENT:            01/29/96
TRIAL JUDGE:                 HON. ROBERT LOUIS GOZA JR.
COURT FROM WHICH APPEALED:   MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      WALTER E. WOOD
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: CHARLES W. MARIS JR.
DISTRICT ATTORNEY:           JOHN KITCHENS
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     CT I RAPE: CT II BURGLARY OF AN OCCUPIED
                             DWELLING AT NIGHT WHILE ARMED WITH A
                             DEADLY WEAPON: CT I SENTENCED TO 30 YRS IN
                             THE MDOC; CT II 15 YRS IN THE MDOC; SENTENCES
                             SHALL BE SERVED CONSECUTIVELY
DISPOSITION:                 AFFIRMED - 06/22/99
MOTION FOR REHEARING FILED:
CERTIORARI FILED:
MANDATE ISSUED:              7/13/99

BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

¶1. Cedric Byrd appeals his conviction of rape and burglary, raising the following issues as error:

**I. THE CIRCUIT COURT ERRED IN NOT DISMISSING THIS CAUSE PURSUANT TO THE 270 DAY RULE.**

**II. THE CIRCUIT COURT ERRED IN FAILING TO STRIKE TESTIMONY OF JENNIFER LINDSEY, PH. D., OR TO DECLARE A MISTRIAL, AFTER IT BECAME APPARENT THAT SHE DID NOT PERFORM THE D.N.A. TEST TO THE RESULTS OF WHICH SHE TESTIFIED.**

¶2. Finding no error, we affirm.

## FACTS

¶3. On June 19, 1993, an armed intruder broke into a Canton dwelling. The intruder entered a bedroom and found R.R.[1] and her one-year-old child asleep in bed. Sleeping in a bed next to R.R. was her sister. The intruder took the baby out of the bed and placed the baby on the floor. R.R. awoke to find a man, his head wrapped in a towel, holding a knife standing over her. A struggle ensued, and the man told her that if she did not lay down and let him have sex with her he would tell his partner to kill her parents in the other room. The intruder also threatened R.R.'s baby by rubbing the knife over the baby. The rape ended when the slats on R.R.'s bed gave out. The intruder walked out. R.R. woke her family and after the family looked around they noticed that the intruder had also stolen some money.

¶4. A rape kit was administered to R.R., and a sexual assault kit was performed on Cedric Byrd. At trial a forensic serologist testified that Byrd's known blood type and secretor status matched that of the person who left a seminal stain on R.R.'s panties. A forensic scientist testified that a human pubic hair found in the pubic combing taken from the victim exhibited the same microscopic characteristics as Byrd's known pubic hair. Finally, Jennifer Ann Lindsey, a special agent employed by the Federal Bureau of Investigation, testified that her analysis of the D.N.A. found in one of the seminal stains left by the rapist led to her conclusion that Byrd was a potential source of the stain, and that the likelihood of another person having a similar pattern of D.N.A. was a conservative one in sixteen million.

¶5. The grand jury of Madison County charged Byrd in April 1994 in five separate indictments with five separate crimes of rape and burglary, including the instant case, cause 2271. Byrd was arraigned on May 27, 1994 on all five indictments. The initial trial setting for these cases was September 19, 1994, although the State intended to go forward with only one of the cases, namely cause 2269. However, before cause 2269 could go to full trial and verdict, the victim in that case got into trouble herself, and the State elected to go forward with the instant case, cause 2271. Trial of cause 2271 was eventually held on January 16, 1996. After deliberations, the jury returned a verdict of guilty for both rape and burglary.

## ANALYSIS

### I.

**THE CIRCUIT COURT ERRED IN NOT DISMISSING THIS CAUSE PURSUANT TO THE 270 DAY RULE.**

¶6. As Byrd's first assignment of error, he argues that his statutory right to be brought to trial with 270 days of arraignment as guaranteed under Miss. Code Ann. § 99-17-1 (Rev. 1994) was violated. Byrd asserts that there was no continuances or any other basis for the delay to be brought to trial within 270 days.

Therefore, Byrd argues that dismissal with prejudice is required because of the alleged violation. In the alternative, Byrd asserts that based on *State v. Harrison*, 648 So. 2d 66, 71 (Miss. 1994), this case should be remanded to determine if he was prejudiced in his ability to defend against the charge and whether the State engaged in oppressive conduct. After a careful chronological and substantive review of the efforts to bring this matter to trial, in conjunction with the motions presented at trial and the arguments advanced before us, we hold Byrd's first assignment of error without merit.

¶7. Miss. Code Ann. § 99-17-1 (Rev. 1994) reads as follows:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

¶8. With regard to this statute our supreme court has stated:

> Where the accused is not tried within 270 days of his arraignment, the State has the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial. *Nations v. State*, 481 So. 2d 760 (Miss. 1985). Continuances for "good cause" toll the running of the 270-day period, unless "the record is silent regarding the reason for the delay," and then "the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue." *Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1988). . . . Continuances that are attributed to the defendant stop the running of the clock and are deducted from the total number of days before trial. *Vickery*, 535 So. 2d at 1376.

*Herring v. State*, 691 So. 2d 948, 953 (Miss. 1997).

¶9. Our supreme court has also held that although the State has the burden of establishing "good cause" for the delays this does not mean that expressions of cause need to be made contemporaneously with the delay. *McGee v. State*, 608 So. 2d 1129, 1133 (Miss. 1992). "Post-delay determinations of cause are permissible and, when supported by substantial credible evidence, shall not be overturned." *Hull v. State*, 687 So. 2d 708, 729 (Miss. 1996) (citing *McNeal v. State*, 617 So. 2d 999, 1007 (Miss. 1993); *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991); *McGee*, 608 So. 2d at 1132)).

¶10. A total of 599 days passed from Byrd's arraignment on May 27, 1994 to his actual trial on January 16, 1996. It would appear that unless "good cause" is shown we would be required by established precedent in *Vickery*, 535 So. 2d at 1380, to reverse and discharge Byrd's conviction or as held in *Harrison*, 648 So. 2d at 71, reverse and remand for a determination of prejudice to Byrd caused by the delay and whether the State engaged in oppressive conduct. However, subsequent to both *Vickery* and *Harrison*, our supreme court in *Walton v. State*, 678 So. 2d 645 (Miss. 1996), has also ruled that where a defendant has failed to affirmatively "request or demand a speedy trial it is presumed that the defendant acquiesced in the delay." *Walton*, 678 So. 2d at 650 (quoting *State v. Davis*, 382 So. 2d 1095, 1098 (Miss 1980)).

¶11. Byrd asserts the record does not contain any continuances and is silent as to any reasons for the delay. As the record originally existed, Byrd's assertions would be true. However, by the State's own motion the record was supplemented with a post trial hearing which discussed the reasons for the delay.[2] Based on the supplemented record the situation in the case at bar is as follows: The grand jury of Madison County

charged Byrd in April 1994 in five separate indictments with five separate crimes of rape and burglary (Cause Numbers 2269, 2270, 2271, 2272, and 2273). Byrd was arraigned on May 27, 1994 on all five indictments. The initial trial setting for these causes was September 19, 1994, although the State intended to go forward first with cause 2269. The defense moved for a continuance, which was granted until January 23, 1995. The order for continuance listed only cause 2269 but what is apparent from the circumstances of this case is that causes 2270-2273 were inadvertently left off the order. The defense moved for a second continuance, which was granted by agreed order until February 20, 1995, and again, only cause 2269 was listed on the order with causes 2270-2273 inadvertently left off. The case was actually called for trial on February 22, 1995, but due to the fact that cause 2269 was a capital case, and each side had twelve peremptory challenges, the venire was exhausted before a jury could be seated, and a mistrial declared. Another trial date was set for September 18, 1995. Before that date was reached, however, the victim in cause 2269 got into trouble herself, and for that reason, the State elected to go forward with the instant case, cause 2271. The defense, feeling it needed more time to prepare since they were now preparing a defense for cause 2271, asked for and received a continuance of the September 18, 1995 trial date until December 4, 1995. On that date the State moved for a continuance because its D.N.A. witness was unavailable. The trial court granted a continuance until January 16, 1996, at which time Byrd was tried and convicted.

¶12. The following chart will better facilitate an understanding of the efforts to bring Byrd to trial.

Chronological Order of Events for Statutory Speedy Trial Analysis

| Date | Event | Delay Between Events |
|------|-------|---------------------|
| 05/27/94 | Arraignment on Cause Numbers 2269, 2270, 2271, 2272, and 2273. | 0 |
| 09/19/94 | Initial trial setting for all causes, continued by defense motion.(State's intention to only go forward with Cause 2269) | 115 |
| 01/23/95 | Second trial date, continued by defense motion | 126 |
| 02/22/95 | Trial proceeds on Cause 2269 and mistrial declared | 30 |
| 09/18/95 | Fourth trial date, continued by defense motion (State's intention to forgo with Cause 2269 and proceed with Cause 2271) | 208 |
| 12/04/95 | Fifth trial date, continued by State motion (January 8, 1996, Byrd filed motion to dismiss on speedy trial grounds) | 77 |
| 01/16/96 | Byrd tried and convicted on Cause 2271 | 43 |

**TOTAL NUMBER OF DAYS ELAPSED FROM ARRAIGNMENT TO TRIAL: 599**

¶13. Byrd was arraigned on May 27, 1994, and trial was first set for September 19, 1994, for a total of 115 days. This time counts against the State as no reason was given in the record for the delay. Byrd then asked for two continuances which resulted in trial being held on February 22, 1995 and a delay of 156

days. As this delay was attributable to Byrd, this time does not count against the State.

¶14. At the time Byrd asked for these continuances the State was only proceeding on cause 2269. However, in a case such as this with multiple counts and with multiple indictments the State decision to proceed only after one indictment is not only understandable but is justified, given the time and resources necessary to prosecute against five indictments at once. Furthermore, it is clear from the record that both the State and the defense understood that a continuance for one cause was in effect a continuance for all causes. Byrd admitted in the post trial hearing that he could not have gone to trial on the causes numbered 2270-2273 on September 19 and would have asked for a continuance no matter what cause was being tried. Therefore, although the State at that time was proceeding under cause 2269 it could have just as easily proceeded against Byrd under cause 2271. The only reason the State failed to follow through to trial and verdict with cause 2269 was the fact the victim got into some unnamed trouble. The State was then forced to make a decision to proceed with cause 2271. The delay of 156 days from September 19, 1994 to February 22, 1995 was caused by Byrd when he asked for the continuances. This delay will not count against the State.

¶15. What is apparent here is that the State and Byrd agreed at arraignment to set all cases for trial on the same date, understanding, however, that cause 2269 would be tried first and the other cases held over since Byrd did not agree to consolidate the causes. What is also apparent is that the only reason formal orders of continuance were not entered in causes 2270-2273 was through inadvertence; all eyes were focused on cause 2269.

¶16. Byrd was effectively brought to trial on cause 2269 on February 22, 1995. Although this trial resulted in a mistrial, the statutory requirement to be brought to trial within 270 was satisfied. *Handley v. State*, 574 So. 2d 671, 674 (Miss. 1990). After the mistrial, the next trial date was set for September 18, 1995, a period of 208 days from the February 22, 1995 trial date. Again this delay was at a time when the State was proceeding under cause 2269. It was during this period between February 1995 and September 1995 that there were undisclosed problems with the victim in cause 2269 resulting in the State's intent to proceed under cause 2271 on September 18, 1995.

¶17. When September 18, 1995 arrived, Byrd asked for a continuance since the defense was not prepared for cause 2271. This continuance was granted, resulting in a new trial date of December 4, 1995. This delay of 77 days does not count against the State as the delay was attributable to Byrd. The December 4, 1995 trial date was continued by the State's motion to January 16, 1996, when the State's D.N.A. witness was not available for December 4, 1995. This final delay of 43 days does not count against the State as "good cause" existed for the delay.

¶18. The pivotal question is whether the delay of 208 days between February 1995 and September 1995 should count against the State. We hold that although this delay of 208 days coupled with the initial delay of 115 days from arraignment to the first trial date would appear to violate Byrd's statutory speedy trial rights, we will not reverse and discharge Byrd's conviction as he acquiesced in the delay and in effect waived his right to complain about not being tried within 270 days.

¶19. The record shows that Byrd never requested nor demanded a speedy trial. On January 8, 1996, some eight days before his trial in this case, Byrd filed for the first time a motion to dismiss the charges because of the State's failure to bring him to trial within 270 days. In that motion Byrd claimed to have written letters to the trial court which he contends "can only be interpreted as Motions for Speedy Trial." However, these

letters are not contained in the original or supplemented record. Since these letters are not in the record we will not and cannot speculate on what these letters actually contained or whether they even existed.

¶20. Our supreme court in *Walton* ruled that where a defendant has failed to affirmatively "request or demand a speedy trial it is presumed that the defendant acquiesced in the delay." *Walton*, 678 So. 2d at 650 (quoting *Davis*, 382 So. 2d at 1098). In *Walton*, the defendant never raised the speedy trial issue within the time frame proscribed by the statute and only asked for speedy trial on the day the defendant's case was set for trial. *Id*. at 649. Our supreme court concluded that Walton, out on bail the entire time, could not "sandbag" the trial court by sitting idly by without filing a speedy trial demand until the day of trial. *Id*. Furthermore, our supreme court could find no prejudice to Walton caused by the delay. *Id*. at 650. Our supreme court held that "Walton waived his right to complain about not being tried within 270 days, because he neither requested nor asserted his right to a speedy trial or objected to a delay and prejudice has not been shown by Walton." *Id*. Byrd never requested a speedy trial and did not file his motion to dismiss until eight days before trial.

¶21. Although *Walton* could be read to imply that prejudice might come into play even if there is a waiver of the right to complain this profits Byrd nothing. Byrd was not out on bail, he still sat idly by while the State went forward with cause 2269 and did nothing to voice his objection to not being brought to trial on cause 2271. In addition, Byrd has not attempted to or shown any prejudice to his defense caused by the delay. From our review of the record in its entirety we cannot see any prejudice to Byrd's defense as a result of the delay nor do we find any deliberately oppressive conduct by the State. We hold that Byrd waived his right to complain about not being brought to trial within 270 days of arraignment.

## II.

### THE CIRCUIT COURT ERRED IN FAILING TO STRIKE TESTIMONY OF JENNIFER LINDSEY, PH. D., OR TO DECLARE A MISTRIAL, AFTER IT BECAME APPARENT THAT SHE DID NOT PERFORM THE D.N.A. TEST TO THE RESULTS OF WHICH SHE TESTIFIED.

¶22. Byrd argues that his right to confront witnesses against him guaranteed by the Constitutions of the United States and Mississippi was violated when Lindsey was allowed to testify about D.N.A. evidence when Lindsey did not even so much as observe the technicians who performed the tests. Byrd bases his argument on *Kettle v. State*, 641 So. 2d 746, 750 (Miss. 1994), where our supreme court held that a defendant was entitled to have the person who conducted a laboratory test appear and testify in person as opposed to the person's supervisor.

¶23. Although Lindsey may not have performed the actual tests on the various D.N.A. samples collected from Byrd and R.R., she did perform the scientific analysis of the data obtained. Byrd was able to confront and cross-examine Lindsey on her analysis. Our supreme court has held that testimony such as was offered by Lindsey is permissible under M.R.E. 703 and does not violate the confrontation clauses of the United States and Mississippi Constitutions. *Gray v. State*, No. 96-DP-00241-SCT, 1998 WL 452320, at *19-20 (Miss. Aug. 6, 1998). Accordingly, this issue is without merit.

**¶24. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I I RAPE AND SENTENCE OF THIRTY (30) YEARS; COUNT I OF BURGLARY OF AN OCCUPIED DWELLING AT NIGHT WHILE ARMED WITH A**

**DEADLY WEAPON AND SENTENCE OF FIFTEEN (15) YEARS TO RUN CONSECUTIVELY , AND CONSECUTIVELY TO PREVIOUS SENTENCES IMPOSED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.**

1. Initials used to protect identity of victim.

2. The post trial hearing was held on October 10, 1997 and filed as part of the record on January 15, 1998, as authorized under M.R.A.P. 10(e).