# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-01064-SCT

*MARK ALLEN DEBROW*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/11/2005 |
| TRIAL JUDGE: | HON. MICHAEL W. MCPHAIL |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL: BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JON MARK WEATHERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/29/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Mark Debrow was convicted of felony driving under the influence for a third offense under Mississippi Code Section 63-11-30 (Rev. 2004) and sentenced to life as a habitual offender. The defendant argues on appeal that the trial court failed to properly swear the jury and that the admission of his blood test was improper. Finding no reversible error, we affirm.

## FACTS

¶2.     Around 8:00 p.m. on September 6, 2004, Officer Michael Palmer of the Petal Police

Department stopped Mark Debrow's vehicle after the defendant attempted to avoid a roadblock. Palmer testified that Debrow smelled like alcohol, that his speech was slurred, and that his eyes appeared "red and glassy." As Debrow exited the vehicle, he held onto the car door to balance himself, and Palmer noticed that his crotch area was wet. The defendant agreed to testing with a portable intoxilyzer and, according to Palmer, his blood alcohol content (BAC) registered above the legal limit. Palmer took Debrow into custody, and at the police station, the defendant refused to submit to further sobriety tests.

¶3. When the officer discovered that Debrow had two previous DUIs, he obtained a search warrant for a blood sample. Palmer took Debrow to Forrest General Hospital, where he had to be restrained for the laboratory technician to take the sample. The technician gave Palmer the blood sample, which he deposited in the police department's evidence room. The next day, Detective Brian Aust took the blood sample to Culpepper Labs for testing. Because the lab's equipment was not working, the sample was sent to Medtox Laboratories in St. Paul, Minnesota. The Medtox employees noted that the name on the vial read Martin Debrow, and obtained verification from Culpepper that the blood sample actually belonged to Mark Debrow. Testing revealed that Debrow's BAC was 0.243 grams per deciliter, roughly three times the legal limit of 0.08.

¶4. At trial, Debrow was convicted and sentenced to life as a habitual offender under Mississippi Code Section 99-19-83 (Rev. 2007).

**ISSUES**

¶5. The defendant argues on appeal that the trial court committed plain error by (1) failing

to administer the statutory oath when swearing the jury and (2) admitting evidence of his blood alcohol content in violation of his Sixth Amendment right to confrontation.

## STANDARD OF REVIEW

¶6.    The standard of review for admission of evidence is abuse of discretion. *Smith v. State*, 839 So. 2d 489, 494 (Miss. 2003) (citing *Farris v. State*, 764 So. 2d 411, 428 (Miss. 2000)). However, when a question of law is raised, the applicable standard of review is de novo. *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 14 (Miss. 2007) (citing *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996)).

## DISCUSSION

### I. Statutory Oath.

¶7.    Debrow argues that the jury was not properly sworn because the administered oath did not conform to the statutory requirement. Before trial, the judge asked the potential jurors:

> Will each of you promise me on your oaths then if you're selected as a juror in this case, that you will follow the evidence as it is presented in this courtroom and render a decision based on that evidence, that proof, and the law that I will instruct you on, and return a fair and impartial verdict in this case? All of you on your oaths promise me that?

> Mississippi Code Section 13-5-71 (Rev. 2002) provides:

> Petit jurors shall be sworn in the following form: "You, and each of you, do solemnly swear (or affirm) that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you, or left to your decision by the court, during the present term, and true verdicts give according to the evidence. So help you God."

¶8.    Although the trial court administered an oath different than that mandated by the Legislature, Debrow failed to raise a contemporaneous objection. Because the trial judge did

3

not have an opportunity to pass on the question, this issue has not been preserved for appellate review. *Palm v. State*, 748 So. 2d 135, 137 (Miss. 1999) (citing *Boutwell v. State*, 165 Miss. 16, 143 So. 479 (1932)).

### II. Admission of Blood Alcohol Level.

¶9.     Debrow also argues that the admission of the results of his blood analysis violated his Sixth Amendment right to confrontation, as the State provided no foundation for the submission of this evidence.  Before trial, the defense moved to suppress Debrow's test results on Fourth Amendment grounds and because Medtox was not certified by the State Crime Lab as required under Mississippi Code Section 63-11-19 (Rev. 2004).  The defense never raised Sixth Amendment grounds, either at trial or in pre-trial motions.

¶10.     Generally, issues not presented to the trial court are procedurally barred on appeal. *Williams v. State*, 794 So. 2d 181, 187 (Miss. 2001) (citing *Foster v. State*, 639 So. 2d 1263, 1288-89 (Miss. 1994)).  However, this Court will proceed under the plain error doctrine and review errors which affect a defendant's fundamental, substantive rights in order to prevent a manifest miscarriage of justice. *Williams*, 794 So. 2d at 187  (citing *Gray v. State*, 546 So. 2d 1316, 1321 (Miss. 1989)).

¶11.     When the results of scientific analysis are admitted into evidence without the testimony of the analyst, such evidence may violate the defendant's right to confrontation as guaranteed under the Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution. *Crisp v. Town of Hatley*, 796 So. 2d 233, 236 (Miss. 2001) (citing *Kettle v. State*, 641 So. 2d 746, 749 (Miss. 1994) and *Barnette v. State*, 481 So. 2d 788 (Miss. 1985)).  This Court has held that criminal defendants are entitled to

require the individual responsible for scientific testing to appear and testify in person. **Kettle**, 641 So. 2d at 750. For example, in **Kettle**, this Court reversed the defendant's conviction of selling a controlled substance when the State failed to provide the person who had conducted the chemical analysis establishing the substance as cocaine. **Id.** This Court has also held that it is error to admit an autopsy report without the testimony of the report's author. **Gossett v. State**, 660 So. 2d 1285, 1295-1297 (Miss. 1995).

¶12. In the present case, Dr. Karla Walker of Medtox Laboratories was accepted at trial as an expert in toxicology. Although she testified that she worked at Medtox as a certifying scientist, she never stated that she participated in any way in testing the defendant's blood, or that she participated in the scientific analysis:

> Q. Where are you employed, Dr. Walker?
>
> A. At Medtox Laboratories in St. Paul, Minnesota.
>
> Q. In what capacity are you employed there?
>
> A. I'm the direct [sic] of clinical toxicology.
>
> Q. And what are your responsibilities just in general in that capacity?
>
> A. I'm essentially responsible for the quality of all of the results that come out of the laboratory – the portion of the laboratory that I'm responsible for, so I'm responsible for the standard operating procedures by which we run our tests, by which samples are handled, and then also for – I serve also in the capacity of a certifying scientist where I review the final work before results are released to our clients.
>
> Q. And would that include testing on D.U.I. sample specimens?
>
> A. Yes.

¶13. The State cites **Byrd v. State**, 741 So. 2d 1028, 1033 (Miss. 1999), for the proposition that the person who performs the actual testing is not required to testify. However, in that case, while the expert did not perform the actual testing, she did perform the scientific analysis. **Id.** As stated above, Dr. Walker never testified that she participated in either the testing or the scientific analysis.

¶14. This Court has also held that "when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." **McGowen v. State**, 859 So. 2d 320, 339 (Miss. 2003). While Dr. Walker was accepted as an expert in toxicology, there was no testimony that she was in any way involved in the testing of Debrow's blood specimen or that she was "actively involved in the production of the report and had intimate knowledge of the analyses even though she did not perform the tests first hand." **Id.** at 340. Accordingly, the court erred in admitting the test results without evidence that Dr. Walker actually performed the test or participated in its analysis.[1]

¶15. However, because overwhelming evidence was presented to the jury that Debrow was intoxicated, this error was harmless. **Chapman v. California**, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 711-12 (1967). *See also* **Thomas v. State**, 711 So. 2d 867, 872 (Miss.

---

[1] Dr. Walker also testified that when her company noticed the patient name on the vial did not match the name associated with the I.D. number, Medtox sent an "information recovery affidavit" to Culpepper Laboratories. Medtox received a faxed copy of this "affidavit," signed by Linda Culpepper, asserting that the sample was from Mark Debrow and not Martin Debrow. The State later offered the testimony of Jennifer Culpepper, and not Linda Culpepper, to establish that the blood belonged to the defendant.

6

1998) (holding that constitutional errors may be harmless where evidence of guilt is "overwhelming"). Both Palmer and the technician who drew the blood sample testified that Debrow smelled of alcohol and that he had urinated on himself. Palmer also testified that Debrow was holding onto his vehicle for support and that the roadside breath-test showed that his BAC was well over the legal limit. Accordingly, the admission of the defendant's BAC was harmless error and does not mandate reversal.

## CONCLUSION

¶16. Although the laboratory results lacked the requisite foundation, this error does not mandate reversal, and the conviction and sentence are affirmed.

¶17. **CONVICTION OF FELONY DRIVING UNDER THE INFLUENCE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE BENEFIT OR POSSIBILITY OF PAROLE OR EARLY RELEASE AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**